## BECK v. DOWNEY et al.
### No. 12642.

United States Court of Appeals
Ninth Circuit.

July 18, 1952.

Writ of Certiorari Denied Nov. 10, 1952.

See 73 S.Ct. 170.

---

6. Jeffries v. United States, 10 Cir., 169 F. 2d 86, 89; Estep v. United States, 327 U.S. 114, 122, 123, 66 S.Ct. 423, 90 L.Ed. 567.

Charles I. Rosin, Los Angeles, Cal., for appellant.

Ben C. Cohen, Alfred Lubin, Los Angeles, Cal., Morris Lavine, Los Angeles, Cal., for appellees.

Before HEALY, Circuit Judge, and FEE and GOODMAN, District Judges.

PER CURIAM.

On February 2, 1951, we filed our opinion and decision in this case reversing the judgment of the District Court. 9 Cir., 191 F.2d 150.

On March 31, 1952, the Supreme Court granted appellees' Petition for a Writ of Certiorari and made the following order:

"PER CURIAM. The petition for writ of certiorari is granted. The judgment is vacated and the case is remanded to the Court of Appeals for further consideration in the light of Beck v. West Coast Life Ins. Co. [38 Cal.2d ——], 241 P.2d 544, decided by the Supreme Court of California on March 21, 1952." 343 U.S. 912, 72 S. Ct. 646.

On June 11, 1952, after hearing argument, we made an order of remand to the District Court to be effective in the event the parties were unable or unwilling to stipulate as to certain additional facts. Being now of the view that there is no need for any remand, and that there are no additional facts of any possible significance that, as a matter of law, bear upon the decision in this cause, we hereby vacate and set aside our order of June 11, 1952.

Pursuant to the direction of the Supreme Court, we have further considered the cause in the light of Beck v. West Coast Life Insurance Co., 38 Cal.2d ——, 241 P.2d 544. Upon reconsideration, we adhere to our former decision 191 F.2d 150.

Beck v. West Coast Life Insurance Company, 38 Cal.2d ——, 241 P.2d 544, involved a contract of insurance, made, executed and to be performed in the State of California.* Hence it was a contract governed by and to be interpreted according to the law of the State of California. In the case before us, the contract was neither made, executed, delivered nor to be performed in California. Hence its interpretation is not governed by nor to be interpreted pursuant to the law of the State of California. The decision in Beck v. West Coast Life Insurance Co., supra, is therefore neither binding upon us as a decision of the highest court of the State of California, upon a question of California law, nor is it apropos here.

We therefore re-adopt our opinion and decision heretofore made, 191 F.2d 150.

The judgment below is accordingly reversed and the District Court is directed to enter judgment in favor of the Administrator.

JAMES ALGER FEE, District Judge (concurring).

It is impregnably founded as judicial doctrine that "the social interest served by refusing to permit the criminal to profit by his crime is greater than that served by the preservation and enforcement of legal rights of ownership."[1] An early pronouncement settled this principle in the

---

* While not specifically so stated in the opinion of the Supreme Court of California, the record in that cause so shows.

1. Cardozo, The Nature of the Judicial Process (1921) 43.

field of life insurance.[2] There the murderer sometimes has no right even against the insurer.[3] Since the right of a beneficiary, either original or alternate, is ordinarily not a vested interest in proceeds of a policy, no statute is required to carry out the principle. Nor is the doctrine of constructive trusts applicable or necessary here, as it might be with vested property rights.[4] If it were applied in this case, the murderer should be held trustee, not for the alternate beneficiary, his mother, but for the murdered wife's heirs or estate.[5] Since title did not automatically lodge in the slayer by operation of law, it would seem a matter of supererogation to vest the fund in him in order to compel him to hold as trustee in virtue of this judicial doctrine. If the gift failed then, normally the proceeds would fall into intestacy.[6] But it is said—and we may agree under normal circumstances—that an alternate beneficiary should take. Here the murdered spouse clearly expressed "if living" as a condition precedent to devolution to the alternate beneficiary.[7] Since there was no trust nor other impediment to the effectiveness of the gift, immediately upon her death the proceeds fell into the estate as intestate assets, for the reason that her murderer could not take by judicial doctrine and the alternate beneficiary could not take because the condition precedent was unfulfilled. No cy pres rationale is necessary to save the gift from lapse.

In this case, over and beyond all else, there is the murderer as primary beneficiary and the murderer's mother as the alternate. If judicial policy dictates that he cannot take directly, no technical consistency should permit him to benefit indirectly by a gift to his family, especially a mother, from whom he would normally acquire property by the statutes of descent and distribution. The policy is pronounced that neither he nor any who takes through him or for his benefit should be recognized.

Both technical and moral consideration demand that our former decision stand.

The remand to us by the Supreme Court indicates misunderstanding of the rationale of the opinion. The basis for this may be in the fact that the findings of the Court do not reflect except by implication certain vital factors which distinguish this case from that considered by the California Supreme Court. (1) The findings do not directly show that the law to be applied was not California law, but that of Indiana, where the policy was written, or Iowa, where it was delivered. True, there is a reference to a stipulation where these facts appear. (2) There is a finding by the Court that it was the intent of the wife to give the proceeds to the murderer's mother if he, although living, could not take. If this had been found as a conclusion of law, as an interpretation of the words of the will, such would have been possible. However, this could not have been found as a matter of fact based on evidence other than the words of the will because there was no such evidence upon which the factual finding was possible. (3) Since everything was lumped together, it does not clearly appear that the insurance company deposited the fund in court, was allowed attorney fees and costs, and has no fur-

2. New York Mutual Life Ins. Co. v. Armstrong. 117 U.S. 591, 600, 6 S.Ct. 877, 29 L.Ed. 997.

3. Prince of Wales, etc., Ass'n Co. v. Palmer, 25 Beav. 605.

4. Although this doctrine is advocated by text writers it receives scant support in the cases, even in those dealing with vested property. If we were interested in California law, it would be noteworthy that the statute as to succession to property provides that the portion to which the murderer would have been entitled does not go to him but follows the law of intestate succession. Calif. Probate Code (Deering 1949). Sec. 258. As to insurance proceeds one court at least has found a resulting trust in favor of insured. Schmidt v. Northern Life Ass'n, 112 Iowa 41, 83 N.W. 860.

5. See National Benefit Life Ins. Co. v. Davis, 33 Ohio App. 454, 176 N.E. 490.

6. This situation can be compared to a lapsed legacy. Johnston v. Metropolitan Life Ins. Co., 85 W.Va. 70, 100 S.E. 865, 7 A.L.R. 823.

7. Bullock v. Expressmen's Mut. Life Ins. Co., 234 N.C. 254, 67 S.E.2d 71.

ther interest in the controversy. It should have been discharged in the first stage of interpleader. Then the normal situation would have developed. There was a fund to which two opposite interests filed claims. These the Chancellor should dispose of according to law and good conscience. On one side are the murderer and the mother of the murderer, who, represented by one attorney, presented a joint claim that the proceeds be allotted to him, but, if for any reason the gift failed, then these should be paid to the mother. On the other side was the administrator of the estate of the wife for the benefit of her heirs. If this procedural situation were plain, it would seem the decision would be correct without regard to the other matters set up in our former opinion.

Upon the suggestion that there were facts showing closer relationship between the first and alternate beneficiaries, and in view of the lack of clarity in the record, I would have thought it preferable to reaffirm our former holding, vacate the judgment, set aside the finding of intent as clearly erroneous, and send the case back for further testimony and for appropriate record which would clearly dispose the basis for our holding.

My colleagues, however, believe there can be no misunderstanding if the record is carefully examined and, with the above explanation, I concur.