[Civ. No. 52671. First Dist., Div. Two. Apr. 29, 1982.]

Estate of HELEN NADINE JEFFERS, Deceased.
KENNETH CORY, as State Controller, Petitioner and Respondent, v.
JOHN JEFFERS, as Co-executor, etc., et al., Objectors and
Appellants.

**COUNSEL**

Vernon L. Hopkinson, Jared G. Carter and Rawles, Hinkle, Carter & Brigham for Objectors and Appellants.

Myron Siedorf, Robert G. Harvey and Mark Jennings for Petitioner and Respondent.

**OPINION**

**ROUSE, Acting P. J.**—Coexecutors of the will of Helen Jeffers appeal from an order fixing inheritance tax.[1]

---

[1]The order in question was inadvertently omitted from the clerk's transcript, but has been added to the record on this court's own motion.

The facts are undisputed: On April 13, 1979, the decedent, Helen Jeffers, shot and killed her husband, Rolland Jeffers, and then shot and killed herself. On the date in question, Helen Jeffers was the owner of policies of insurance on the life of her husband, which insurance had a value of $134,490.60. Prior to the shooting, Helen Jeffers had designated herself as beneficiary of the proceeds of the insurance policies if she survived her husband by 30 days. In a will which she had executed on October 5, 1978, Helen had designated a trust for her children as the alternative beneficiary of the insurance proceeds. The cotrustees of this trust, who are also the coexecutors of Helen Jeffers' will, are John Jeffers and the Independent Bankers Trust Company.

The state inheritance tax referee filed a report which included the proceeds of the insurance on the life of Rolland Jeffers as a part of Helen Jeffers' estate. John Jeffers and the Independent Bankers Trust Company (hereafter objectors) filed an objection to the report, claiming that the life insurance proceeds should have been excluded from Helen Jeffers' estate because she had caused her husband's death, thereby forfeiting the right to receive any of the proceeds of such insurance.

The state Controller (hereafter Controller) claimed that the life insurance proceeds were properly included in Helen Jeffers' estate as a gift in contemplation of death or, alternatively, as a gift made with the intention that it take effect in possession or enjoyment at or after the death of the decedent.

The trial court ruled in favor of the Controller and rendered an order fixing the inheritance tax on Helen Jeffers' estate in the manner computed by the state inheritance tax referee.

■ It is the settled rule in this state that a person who deliberately and without justification causes the death of an insured cannot claim as a beneficiary the proceeds of a life insurance policy on the insured's life. (*Beck* v. *West Coast Life Ins. Co.* (1952) 38 Cal.2d 643, 644-645 [241 P.2d 544, 26 A.L.R.2d 979]; *Aetna Life Ins. Co.* v. *Primofiore* (1978) 80 Cal.App.3d 920, 923-924 [145 Cal.Rptr. 922]; *Estate of McGowan* (1973) 35 Cal.App.3d 611, 615-616 [111 Cal.Rptr. 39].) The objectors argue that since Helen Jeffers deliberately caused the death of her husband, and thereby rendered herself ineligible to receive any portion of the insurance proceeds on his life, there is no basis for the trial court's determination that the proceeds of such insurance were includable in her taxable estate.

The Controller concludes that since Helen Jeffers killed her husband and then took her own life, thus insuring that she would not survive him by 30 days, she was thereby making a transfer in contemplation of death to the alternative beneficiary "and/or a transfer made with the intention that it take effect in possession or enjoyment at or after the death of the transferor." He bases his position upon sections 13641 through 13643 of the Revenue and Taxation Code.[2]

■ There is little doubt that, when she designated the trust as the alternative beneficiary of the insurance proceeds on the policies on Rolland Jeffers' life, Helen Jeffers made a "transfer" as that term is defined in section 13304.[3]

■ The state has the burden of showing that such a transfer was made in contemplation of death. (*Estate of Adams* (1952) 39 Cal.2d 309, 318 [246 P.2d 625]; *Estate of Kupser* (1971) 17 Cal.App.3d 919, 925 [95 Cal.Rptr. 279].) In this instance, however, even in the absence of extrinsic evidence bearing upon Helen Jeffers' motives for designating an alternative beneficiary of the proceeds of the insurance policies on Rolland Jeffers' life, it would appear that the very act of making such designation would support a finding that her conduct was in contemplation of death, within the meaning of section 13642. That section

---

[2]Unless otherwise specified, all statutory references are to the Revenue and Taxation Code.

Section 13641 provides that "If a transfer specified in this article was made during lifetime by a decedent, for a consideration in money or money's worth, but the transfer was not a bona fide sale for an adequate and full consideration in money, or money's worth, the amount of the transfer subject to this part shall be the excess of [¶] (a) The value, at the date of the transferor's death, of the property transferred, over [¶] (b) An amount equal to the same proportion of the value, at the time of the transferor's death, of the property transferred which the consideration received in money or money's worth for the property transferred bears to the value, at the date of transfer, of the property transferred."

Section 13642 provides that "A transfer conforming to Section 13641 and made in contemplation of the death of the transferor is a transfer subject to this part, but no such transfer shall be deemed or held to have been made in contemplation of death if made more than three years prior to the death of the transferor.

"'Contemplation of death' includes that expectancy of death which actuates the mind of a person on the execution of his will. The term is not restricted to that expectancy of death which actuates the mind of a person making a gift causa mortis."

Section 13643 states that "A transfer conforming to Section 13641 and made with the intention that it take effect in possession or enjoyment at or after the death of the transferor is a transfer subject to this part."

[3]Section 13304 provides that "'Transfer' includes the passage of any property, or any interest therein or income therefrom, in possession or enjoyment, present or future, in trust or otherwise."

expressly states that "contemplation of death" includes "that expectation of death which activates the mind of a person on the execution of his will" and that it need not involve any actual fear of imminent death. The fact that Helen Jeffers chose to designate an alternative beneficiary to receive the insurance proceeds in the event that she failed to survive her husband by 30 days would appear sufficient, in itself, to support the inference that she was motivated by the considerations which would cause an individual to execute a will.

There is merit, also, to the Controller's remaining theory that section 13643 applies because Helen Jeffers' act of designating the trust as an alternative beneficiary in the event that she did not survive her husband by 30 days constituted a transfer "made with the intention that it take effect in possession or enjoyment at or after the death of the transferor . . . ."

Helen Jeffers' designation of the trust as the alternative beneficiary falls directly within the purview of this language. Since this designation was to take place only in the event that Helen, herself, failed to survive her husband by 30 days, the conclusion is inescapable that the transfer to the trust would, of necessity, take effect in possession and enjoyment only at or after Helen's death.

However, our conclusion that the insurance designation made by Helen Jeffers did fall within the purview of sections 13642 and 13643 does not end our inquiry.

For one thing, the Controller's position presupposes that, at the time of her designation of an alternative beneficiary, or at any time thereafter, Helen Jeffers had a property interest in the policy which was capable of being transferred. On this point the Controller argues, for the first time on appeal, that Helen Jeffers' act of killing her husband did not deprive her of the right to pass to her alternative beneficiary whatever interest she had acquired under the policy prior to the death of the insured. The argument is academic. Since it was not raised in the trial court there is no evidence in the record before us which identifies Helen Jeffers' taxable property interest, if any, in the policy or which shows that the policy had any cash surrender value prior to the killing of the insured. Thus there was no basis upon which the trial court could include any portion of the proceeds of the policy in Helen Jeffers' estate. (*Aetna Life Ins. Co.* v. *Primofiore, supra,* 80 Cal.App.3d 920, 926.)

Second, there remains the question whether Helen's designation of an alternative beneficiary should be given any effect in view of her conduct in killing the insured, her husband.

Objectors rely upon the case of *Beck* v. *West Coast Life Ins. Co., supra,* 38 Cal.2d 643, in support of their position. However, the reasoning of *Beck* is not controlling here, since that case involved an alternative beneficiary designated by the insured, whereas, here, we are confronted with an alternative beneficiary designated by the primary beneficiary, who was responsible for the death of the insured. Stated differently, if we were to hold here that the insurance proceeds belonged to the trust which Helen Jeffers designated as her alternative beneficiary, rather than to the estate of the insured, we would be giving effect to the intent of the murderer and not, as in *Beck,* to the intent of the insured.

Although neither of the parties has cited it, the early case of *Meyer* v. *Johnson* (1931) 115 Cal.App. 646 [2 P.2d 456], involves a situation more similar to this case. In *Meyer,* an insurance policy on the life of the wife was payable to her husband. He then murdered his wife, and the question before the appellate court was whether the insurance proceeds went to the heir of the wife or to the heir of the husband. In concluding that the wife's heir was entitled to prevail, the court stated, "If the rule were that the personal representatives of murderously inclined beneficiaries might take money made bloody by the slaying of those inclined to generosity, how many individuals who now walk the streets might ride in Rolls-Royces or emulate the eagle in his dizzy flight? By such a rule many a beneficiary, aged or infirm, and contemplating a young and healthful assured, would be tempted to commit a crime which would enrich his heirs, although it were too late to enrich himself. Indeed, many a man has committed atrocious crimes for the benefit of his children." (P. 650.)

The result reached in the *Meyer* case is in accord with section 189, subdivision (1), of the Restatement of the Law of Restitution, which states that "If the beneficiary of a life insurance policy murders the insured, he holds his interest under the policy upon a constructive trust for the estate of the insured." In an American Law Report Annotation on the subject, California is included among those jurisdictions which follow this rule. (27 A.L.R.3d 794, 830-834.)

There appears to be no valid basis for distinguishing this case from *Meyer* v. *Johnson, supra.* It is true that in that case, the court rejected

the claim of an heir of a beneficiary responsible for the death of the insured, whereas this case involved a trust which was designated as an alternative insurance beneficiary by the primary beneficiary who caused the insured's death. However, this distinction appears to be of no real significance. The crucial fact is that, in both instances, the primary beneficiary who killed the insured should be denied the right *by any means* to specify the recipient of the insurance proceeds and thereby profit from his own wrong. Instead, he should be deemed to hold said funds solely as a constructive trustee for the insured's estate.[4]

█ We conclude that, in the circumstances of this case, the proceeds of the insurance policies in question could never have become the property of Helen Jeffers. Accordingly, the court erred by including those proceeds as part of her taxable estate.

The order is reversed.

Miller, J., and Smith, J., concurred.

---

[4]The Controller argues for the first time on appeal that a life insurance beneficiary who kills the insured does not thereby forfeit whatever interest under the policy had already vested in the beneficiary at the moment before the killing. Thus, it is argued that Helen Jeffers' act of killing her husband did not deprive her of the right to pass to her alternative beneficiary whatever interest she had acquired under the policy prior to the death of the insured.

This argument must fail for the reason that the Controller did not raise it in the trial court and there is therefore no evidence that community funds were ever used to pay the premiums on the policy or that said policy had any cash value prior to the killing of the insured. Such being the case, there was no basis upon which the trial court could include any portion of the proceeds of the policy in Helen Jeffers' estate. (*Aetna Life Ins. Co. v. Primofiore, supra*, 80 Cal.App.3d 920, 926.)