135 Cal.App.3d 684 (1982)
185 Cal. Rptr. 544
Estate of THERESA L. HART, Deceased.
ALICIA BERRATO, as Administrator, etc., Petitioner and Appellant,
v.
BILLY D. RAY, as Administrator, etc., Objector and Respondent.
Docket No. 24671.
Court of Appeals of California, Fourth District, Division One.
September 13, 1982.
*686 COUNSEL
Garfield, Schwartz & Copeland and Judith M. Copeland for Petitioner and Appellant.
Don L. Harrington for Objector and Respondent.
OPINION
STANIFORTH, J.
James R. Hart shot his wife Theresa and then himself. She died immediately; he died later the same day (Mar. 26, 1980). Both died intestate.[1] At the time of the deaths the couple owned real property in joint tenancy and certain items of personal community *687 property consisting of life insurance policies, a sailboat, trailer and bank account. The petition of Berrato, the administrator of the wife's estate, seeks to quiet title to the real and personal property of these parties in the estate of the deceased wife. (Prob. Code, § 851.5.) Ray is the administrator of the husband's estate. (1a), (2a) The trial court held (1) all real and personal property of the decedent wife was held in joint tenancy to be divided equally between their estates and (2) all personal property held as community property, including the proceeds from all life insurance policies held as community property, be divided equally between their estates with the exception of a life insurance policy (Aetna) on the husband's life, naming his father contingent beneficiary. The administrator of the wife's estate appeals, contending the heirs to the deceased husband are barred from succeeding to any portion of either the joint tenancy or community property.

DISCUSSION

I
The decisions determining the rights and obligations of a surviving joint tenant (or the estate of such surviving joint tenant) who has killed his cotenant are in conflict. The Supreme Court has as yet not resolved the conflict. The earliest decision in this state is from this district, Abbey v. Lord (1959) 168 Cal. App.2d 499 [336 P.2d 226]. In Abbey the surviving husband (who had killed his wife) claimed a one-half interest in joint tenancy property (stock). In Abbey there had been an agreement in connection with an earlier separation which set the respective contributions of the husband and wife at 37 percent and 63 percent, respectively.
The trial court found the husband was entitled to 37 percent interest in the property and quieted title to the remainder of the estate in the deceased wife. On appeal this court said: "In the instant case the trial court concluded that the joint tenancy in the stock was destroyed and terminated by the act of killing the decedent. The court converted the joint tenancy into a tenancy in common. As readily the court could have found the joint tenancy was preserved and that the defendant was a constructive trustee, and that half or all of the property passed thereby to plaintiff. The court, however, adopted a practical solution fairest to the plaintiff and to the defendant. This court does not believe that it should countenance the addition of homicide as an approved method of *688 terminating a joint tenancy without affecting the results found by the trial court." (Abbey v. Lord, supra, at pp. 508-509.) This court concluded "the trial court applied sound equitable principles that a man should not profit from his own crime and no common-law fiction ought to impair the judgment." (Id., at p. 510.)
A later case (Whitfield v. Flaherty (1964) 228 Cal. App.2d 753, 761 [39 Cal. Rptr. 857]) did apply a common law fiction in resolution of rights in joint tenancy property. The court explained Abbey v. Lord by saying that no rule was adopted by which to determine whether the whole or what part of the property should be held by the survivor as a constructive trustee. (Ibid.) Whitfield pointed out the marked conflict in decisions over the rights and obligations of a surviving joint tenant.[2]Whitfield concluded where the survivor (contemporaneously with his killing) commits suicide, any life estate or interest he might have had in the income is eliminated. Under such circumstances the whole of the property should be impressed with a constructive trust and the beneficiary of that trust to be determined in accord with the rules prescribed in section 2224 of the Civil Code. The court concluded the statutes and policies of this state prevent inheritance from a decedent by one convicted of murder or voluntary manslaughter of that decedent and preclude inheritance from or taking under a will of a decedent by one who unlawfully and intentionally caused the decedent's death. The Supreme Court denied a petition for hearing.
Since Whitfield the case of Saltares v. Kristovich (1970) 6 Cal. App.3d 504 [85 Cal. Rptr. 866], pointed again to the division of authority and found the weight of authority holds where one joint tenant intentionally and unlawfully causes the death of the other, the surviving joint tenant becomes a constructive trustee of the entire property for the benefit of the deceased heirs or estate subject to the survivor's life interest in one-half of the property.
This decision and the reasoning underlying it as well as that of Whitfield v. Flaherty have been subjected to a most critical scrutiny in the latest case treating this subject, Johansen v. Pelton (1970) 8 Cal. App.3d 625 [87 Cal. Rptr. 784] (hg. den.). Johansen involved a murder-suicide with the decedents' joint tenancy property claimed by the wife's as well as the husband's estate. Johansen carefully scrutinized the pertinent *689 code sections[3] and pointed out the real controversy under the code sections involves the extent to which the interests of the wrongdoing husband's estate has been enlarged by his felonious act. The Johansen court looked to see what the wrongdoer gained by his wrong or if he gained only something "to which he would otherwise be entitled to succeed." Thus the question presented in Johansen was whether the slayer's representatives had been unjustly enriched by one-half or by the whole of the joint tenancy property to which the husband received full legal title as the surviving joint tenant.
In Johansen v. Pelton, supra, 8 Cal. App.3d 625, at page 631, the trial judge had speculated  in Restatement manner[4]  that but for the murder, the husband might have predeceased his wife, in which case he would not have been entitled to the property. The appeal court disagreed: "To predict the respective life spans of the parties, and to assume that the property would retain its status as joint tenancy property during their joint lives is pure conjecture." (Ibid.; italics added.) The appeal court concluded the rule urged by the Restatement truly "properly" punishes one who takes the property and thus "may be said to be a deterrent for a slaying motivated by cupidity." However, such a rule "has little purpose where suicide demonstrates that the actor has no intent to enjoy the fruits of his crime." (Ibid.) From the Johansen court analysis, it follows that the constructive trust concept has no necessary relationship to the set of facts under which a particular death may have occurred.
*690 Furthermore, the effect of such a rule is: "To deprive the heirs of the slayer of all interest in the property is to embrace a policy which tends to work a forfeiture, attainder, or corruption of the blood, with respect to the property interest which the surviving malefactor had at the instant before the slaying, and which, except for the intervention on the theory adopted by the trial court, would have passed to his heirs." (Id., at p. 632.)
The Restatement rule distinguishes joint tenancies from tenancies in common, tenancies by the entirety and community property and suggests that where the three latter forms of title are used, no constructive trust concept should be applied to the murderer (or his estate) since his interest is not derived from or increased by the murder. While these common law real property distinctions as to forms of title have certain relevance in California family law, these fine distinctions must be viewed in light of California judicial decisions and statutes that tend to blur the ancient lines of demarcation. For example, under Civil Code section 5110 where a single-family residence is acquired during the marriage with title in joint tenancy, for purpose of division on dissolution of the marriage, the presumption (although rebutable) is that the dwelling is community property. Furthermore, under California law the inchoate interest of a spouse in joint tenancy property (absent an intent to the contrary) is his or her separate property. (See 32 Cal.Jur.3d, Family Law, § 443, p. 516, fn. 94 & cases cited.) "`The theory underlying those decisions which justify the result of the heirs of the murdered joint tenant taking all (not merely one-half) of the property is that, by reason of the murder, the murdered joint tenant is thereby prevented from ever securing title to the whole by survivorship. However, it is entirely a matter of speculation as to which joint tenant would have outlived the other, in the event the murder had not been committed, or that a severance would not have taken place during the lifetime of both joint tenants as a result of alienation by either, partition, or divorce. Therefore it seems that the result reached [by these cases allowing all of the property to go to the victim's estate come] very close to working a corruption of blood, or a forfeiture of estate, as to one who has been guilty of crime....' [Citation.]" (Johansen v. Pelton, supra, at p. *691 633.) Such a rule effects a forfeiture, an extinction of civil rights in an estate, real or personal, where joint tenancy is the title form when the murder occurs. Such a corruption of the blood by the state law is violative of and banned by the United States Constitution. (Art. I, § 10; art. III, § 3.)
The rule that the survivor take all or none disregards the general principle disfavoring unjust enrichment and fails to consider what the malefactor gained or did not gain as a result of the killing. The rule recommended in the comment (a) to the Restatement appears to unduly weigh what the victim lost; it does so in derogation of what the slayer had, equitably if not legally, before the wrongful act. "The seeming anomaly that the part gained and the part lost cannot be reconciled is due to the fact that the inchoate rights  with survivorship  of the two joint tenants are in reality greater than the whole while the tenancy exists. Any solution must, therefore, at best be a compromise. For the reasons set forth above it is concluded that a solution which recognizes the slayer's preslaying inchoate right to one-half the property is most equitable." (Id., at p. 635.)
(1b) The trial court here adopted this latter view. It cannot be said that such a result is contrary to law or is an unreasonable or unfair solution to a most difficult problem.

II
(2b) There are no California cases dealing with devolution of the community ownership interests where one spouse has killed the other and then himself. However, the parties concede that the life insurance policies of the parties purchased during the marriage with community funds are community property. The wife's administrator, however, contends that the estate of the deceased slayer is entitled only to one-half of the community life insurance policies as measured by payment of premiums or at most one-half of the cash surrender value on the date of the death, citing Manufacturers Life Ins. Co. v. Moore (S.D.Cal. 1953) 116 F. Supp. 171 and Succession of Butler (La. App. 1962) 147 So.2d 684.)
Civil Code section 5110 states in part: "Except as provided in sections 5107, 5108, 5109, all real property situated in this state and all personal property wherever situated acquired during the marriage by a married person while domiciled in this state and property held in trust pursuant to section 5113.5 is community property." (3) As a general rule the policy of life insurance on the life of a spouse and the proceeds thereof *692 are community property if the premiums are paid out of community funds. (Union Mutual Life Ins. Co. v. Broderick (1925) 196 Cal. 497, 507 [238 P. 1034]; 32 Cal.Jur.3d, Family Law, § 420.)
(2c) The rule suggested in the Restatement of Restitution, section 188, comment b,[5] distinguishes the rights of the co-owner from those of a murderer who has an interest in property contingent upon his surviving the victim. As it pointed out: "If one tenant in common murders the other, no constructive trust will be imposed upon the murderer since his interest is not derived from or increased by the murder." (Italics added.) This reasoning would certainly extend to the cash surrender value at the date of death but not to a full one-half of the proceeds. The reasoning of Manufacturers Life Ins. Co. v. Moore, supra, 116 F. Supp. 171, appears most persuasive on this point. The federal court reviewed applicable California statutes and case law and concluded (at p. 177): "[T]o allow one-half of the death benefit is to allow a profit as a result of the murder, for the death benefit is more than the total premiums paid in.... However, the surrender value of the policies immediately before death is different than one-half of the total premiums paid and the primary beneficiary has a vested interest to the extent of one-half of the surrender value of the policy immediately prior to the tort. The spouse who takes one-half of the community interest under circumstances which limit her to not profiting from her own wrong must take that interest as it existed the moment before the wrong was done." As was said in Aetna Life Ins. Co. v. Primofiore (1978) 80 Cal. App.3d 920, 926 [145 Cal. Rptr. 922] "`"It would be a reproach to the jurisprudence of the country, if one could recover insurance money payable on the death of a party whose life he had feloniously taken. As well might he recover insurance money upon a building that he had wilfully fired." ...'
*693 "[I]n order to carry out the declared public policy of this state ... when one spouse kills the other, the value of the slayer's interest in any community property must be determined as of the moment before the wrongful act was committed." (Id., at p. 926; italics added.) Based upon the foregoing reasons and authorities, we conclude the perpetrator spouse's community interest in the insurance policies is one-half of the cash surrender value of the policies on the life of the wife immediately before the commission of the wrongful act.

III
(4) The father of the slayer-spouse was the named contingent beneficiary on the Aetna policy. It is agreed that this policy was community property, a product of the husband's employment. If the father of James R. Hart received the total proceeds, a gift of community property of at least the wife's one-half would be effected. The law is clear that one spouse may not make a gift of community personal property without a valuable consideration or without the written consent of the other spouse. (Civ. Code, § 5125, subd. (b); Wright v. Title Ins. & Trust Co. (1969) 274 Cal. App.2d 252, 258 [79 Cal. Rptr. 12].)
There was no evidence before the trial court that the wife consented in writing or received any consideration for the naming of the husband's father as the contingent beneficiary. This lack of evidence warrants the conclusion the husband had no authority to make a gift of the wife's one-half. (Wright v. Title Ins. & Trust Co., supra, at p. 259.) It therefore follows the estate of Theresa L. Hart is entitled to one-half of the proceeds on the Aetna policy and the contingent beneficiary entitled to the remaining one-half. The judgment with respect to the joint tenancy property is affirmed. The judgment with respect to the division of community property other than the life insurance policies is affirmed. The judgment with respect to the life insurance policies is reversed and remanded with directions to conduct further proceedings conformable to the views expressed herein.
Cologne, Acting P.J., and Reed, J.,[*] concurred.
NOTES
[1] On the same day Hart shot and killed the couple's minor son Daniel.
[2] Page 760, footnote 3, sets forth the differing theories and results arrived in the various jurisdictions.
[3] Civil Code section 2224 provides: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

Civil Code section 3517 provides: "No one can take advantage of his own wrong."
Probate Code section 258 provides: "No person who has unlawfully and intentionally caused the death of a decedent, and no person who has caused the death of a decedent in the perpetration or attempt to perpetrate arson, rape, robbery, burglary, mayhem, or any act punishable under Section 288, Penal Code, shall be entitled to succeed to any portion of the estate or to take under any will of the decedent; but the portion thereof to which he would otherwise be entitled to succeed goes to the other persons entitled thereto under the provisions of this chapter or under the will of the decedent. A conviction or acquittal on a charge of murder or voluntary manslaughter shall be a conclusive determination of the unlawfulness or lawfulness of a causing of death, for the purposes of this section."
[4] The pertinent comment (a) of section 188 of the Restatement of Restitution is as follows: "The rule stated in this Section is based upon the principle that although the murderer will not be deprived of property to which he would otherwise be entitled, he will not be entitled to profit by the murder; and where it is doubtful whether or not he would have had an interest if he had not committed the murder, the chances are resolved against him. Thus, if the murderer had an interest in property contingent upon his surviving his victim, he is not entitled to keep the property, since although he survives the victim he does so as a result of the murder, and but for the murder he might have predeceased the victim, in which case he would not have been entitled to the property. It is immaterial that because of their respective ages, state of health or the like, it is probable that the murderer would have been the survivor."
[5] The Restatement of Restitution, section 188, comment b, provides: "Murder by co-owner. If one tenant in common murders the other, no constructive trust will be imposed upon the murderer since his interest is not derived from or increased by the murder. The situation is different where there are two joint tenants and the principle of survivorship is applicable. In such a case if one of them murders the other, the murderer takes by survivorship the whole legal interest in the property, but he can be compelled to hold the entire interest upon a constructive trust for the estate of his cotenant, except that he is entitled to one-half of the income for life. It is immaterial that each of them might have compelled a partition before the death of either. The same rule is applicable to husband and wife holding as tenants by the entireties, except that if the husband is entitled to the control and income of the property during his lifetime, and he murders his wife, he is entitled to continue to receive the whole of the income as long as he lives, but subject thereto he holds the entire interest upon a constructive trust for the estate of his wife excluding himself."
[*] Assigned by the Chairperson of the Judicial Council.