[No. D013109. Fourth Dist., Div. One. Oct. 10, 1991.]

STATE FARM LIFE INSURANCE COMPANY, Plaintiff, v.
JAMES F. PEARCE, as Administrator, etc., Defendant and Appellant;
CHARLOTTE MILES, Defendant and Respondent.

## Counsel

Dennis B. Atchley for Defendant and Appellant.

Daniel V. Burke and Larry W. Jones for Defendant and Respondent.

## Opinion

**HUFFMAN, Acting P. J.**—In this interpleader case brought by State Farm Life Insurance Company (State Farm), seeking instructions as to the disposition of certain life insurance proceeds, cross-motions for summary judg-

ment were brought. The respective moving parties were the contingent beneficiary named under the life insurance policies, defendant and respondent Charlotte Miles, and the estate of the deceased insured, Robert Wayne Pearce, by James F. Pearce, administrator of the estate (the estate) (appellant herein). Each sought an order establishing entitlement to the policy proceeds. The trial court granted the motion by the contingent beneficiary Miles with the proviso that she submit a proposal to guarantee that the proceeds of the insurance policies would not be used for the benefit of her sister Roberta Pearce (Roberta), the wife of the decedent, since Roberta had been found guilty of having him murdered. The cross-motion for summary judgment by the estate was denied and it appeals, contending the trial court erred in applying the law and, alternatively, that even if the trial court correctly applied statutory and case law, public policy should prevent Miles, as sister of the killer, from recovering the proceeds of insurance policies on the life of the decedent.

Our analysis of this record reveals that the parties are incorrect in characterizing this record as presenting no triable issues of fact. The trial court accordingly erred in granting summary judgment to Miles. We reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 31, 1989, Robert Wayne Pearce (Wayne) was stabbed to death. At the time of Wayne's death, he and Roberta were separated and Roberta had filed for dissolution. Standard temporary restraining orders were issued, including an order preventing the parties from changing the beneficiary designation on any policy of life insurance. Shortly thereafter, Roberta was arrested and charged with his killing. She was convicted of first degree murder and sentenced to life imprisonment.

At the time of his death, Wayne was the owner-insured of three life insurance policies and one annuity policy issued by State Farm, which had a total face value of $200,000. Each of these policies, purchased with community funds between 1978 and 1983 during Wayne's and Roberta's marriage, designates Roberta as the primary beneficiary and her sister Miles as the successor or contingent beneficiary.[1] On June 29, 1989, after the murder, Roberta assigned all of her rights under the policies to the successor beneficiary, Miles, authorizing her to take all steps necessary to collect the money due under the policies.

On August 30, 1989, State Farm filed its complaint in interpleader (Code Civ. Proc., § 386), seeking the court's instructions in resolving conflicting

---

[1] Roberta and Wayne Pearce had no natural or adopted children.

demands made upon State Farm for the policy proceeds. Pursuant to Roberta's assignment of her rights to Miles, Miles sought payment under the policy as the contingent beneficiary. Wayne's estate also made demands for the policies' benefits. The money was deposited with the clerk of the court, and State Farm obtained a dismissal from the action.[2]

Miles brought a motion to discharge State Farm as plaintiff and to declare herself entitled to the interpleaded funds in January 1990. The motion was denied with the suggestion that an appropriate resolution of the matter would be by way of summary judgment. Miles duly brought her motion for summary judgment under Code of Civil Procedure section 437c, claiming that since Roberta was not eligible to receive the insurance policy proceeds because of the operation of Probate Code section 252, Miles was entitled to the proceeds.[3]

Wayne's estate filed its own motion for summary judgment to be heard at the same time. It contended Miles was not entitled to payment of the insurance proceeds either as an assignee of Roberta or on her own behalf, on the grounds that a condition precedent to Miles's rights under the policy as a contingent beneficiary did not exist; i.e., the primary beneficiary was still living. Accordingly, the estate argued Miles should not receive the funds because if she did, Roberta might receive a benefit as a result of her wrongful act, as a possible intestate heir of her sister Miles. The estate also contended distribution of the proceeds to Miles would be contrary to the intent of the decedent and would be against public policy, and would violate the constructive trust imposed on the Pearces' community property. (See fn. 2, *ante.*)

At the hearing on the motions, the court cited the parties to the authority of *Estate of Hart* (1982) 135 Cal.App.3d 684 [185 Cal.Rptr. 544], and continued the matter for supplemental briefing and further hearing. In the additional briefing submitted by the estate, it changed its position that it was entitled to the entire policy proceeds and asserted a new theory that Wayne had given his one-half interest in the proceeds to Miles, by way of his

---

[2]The insurance policy proceeds were placed under constructive trust in the probate action concerning the estate. (Pearce v. Pearce et al. (Super. Ct. San Diego County, 1989, No. PN 14985).)

[3]Probate Code section 252 was enacted in 1984; it reads as follows: "A named beneficiary of a bond, life insurance policy, or other contractual arrangement who feloniously and intentionally kills the principal obligee or the person upon whose life the policy is issued is not entitled to any benefit under the bond, policy, or other contractual arrangement, and it becomes payable as though the killer had predeceased the decedent."

All further statutory references are to the Probate Code unless otherwise specified. Section 252 was not changed by the Legislature's wholesale revamping of the Probate Code effective July 1, 1991.

designation of her as contingent beneficiary. However, the estate continued to claim it was entitled to the other one-half of the policy proceeds, which represented Roberta's one-half community interest in the policy, which by reason of her murder of Wayne passed by intestate succession to him, or if he was not living, to his estate. (§§ 252, 6401, subd. (a).)

At the continued hearing, the court granted Miles's motion for summary judgment in light of the ruling in *Estate of Hart, supra,* 135 Cal.App.3d 684, and denied the motion by the estate. The court made the further order:

"[S]ummary judgment for Defendant Miles will be stayed for thirty (30) days, until a proposal is submitted by Defendant Miles and approved by the Court such that the proceeds of the insurance policies at issue will not be used directly or indirectly for the benefit of Roberta Pearce. This order is made in accordance with *Estate of Jeffers* [1982] 134 Cal.App.3d [729] and *New York Life Ins. Co.* v. *Cawthorne* (1975) 48 Cal.App.3d 651, which hold that a primary beneficiary who kills the insured must not profit from her own wrongdoing." The stay imposed was lifted at a later time. The estate timely appealed.[4]

## DISCUSSION

The estate contends the summary judgment granted to Miles is erroneous in two respects: it represents an error of law by the trial court in interpreting *Estate of Hart, supra,* 135 Cal.App.3d 684 in light of later enacted statutory law, section 252. In the alternative, the estate argues that even if the trial court correctly applied existing law, public policy considerations require that existing law be changed. In support of these claims of error, the estate contends the trial court should have selected Wayne's estate, rather than Miles, as the proper beneficiary of the policy proceeds because it is possible that Roberta helped Wayne select Miles as a contingent beneficiary. Further, the estate cites a law revision commission comment to section 252 which indicates that if a killer is treated as having predeceased the decedent for the purpose of life insurance or other contractual benefits, "the killer's heirs are similarly disqualified." (Cal. Law Revision Com. com., 52 West's Ann. Prob. Code, § 252 (1991) p. 164 [Deering's Ann. Prob. Code, § 252 (1991 pocket supp.) p. 93]; *Meyer* v. *Johnson* (1931) 115 Cal.App. 646 [2 P.2d 456]; *Estate*

---

[4]The record does not include any judgment entered upon the order granting Miles's motion for summary judgment. However, we construe that order to be a final judgment which is properly reviewable. (*Johnson* v. *Hydraulic Research & Mfg. Co.* (1977) 70 Cal.App.3d 675 [139 Cal.Rptr. 136].) In addition, we may review the denial of the estate's motion as part of the final judgment. (*Coast Elevator Co.* v. *State Bd. of Equalization* (1975) 44 Cal.App.3d 576, 585 [118 Cal.Rptr. 818] [disapproved on another point in *Culligan Water Conditioning* v. *State Bd. of Equalization* (1976) 17 Cal.3d 86, 93, fn. 4 (130 Cal.Rptr. 321, 550 P.2d 593)].)

*of Jeffers* (1982) 134 Cal.App.3d 729 [182 Cal.Rptr. 300].) As an additional consideration, the estate criticizes as ineffective and unenforceable the trial court's efforts to insulate Roberta from a possible windfall of policy benefits that could be obtained through her sister Miles.

In support of the public policy arguments presented by the estate, general equitable principles applicable to this interpleader action are invoked, and the obvious legislative purpose of section 252 (to deny benefits to a killer) is cited. Moreover, the estate points out that the temporary restraining order in effect in Roberta and Wayne's dissolution action at the time of his death prevented him from having any opportunity after the marital separation to change the designation of his primary or contingent beneficiary.

We shall discuss the estate's specific contentions to the extent necessary to reach the dispositive issue presented by this record: whether Wayne's designation of Miles as his contingent beneficiary, in view of the temporary restraining order in effect at the time of his death, actually represented his testamentary and donative intent at the time of his death. (*Beck* v. *West Coast Life Ins. Co.* (1952) 38 Cal.2d 643, 646-647 [241 P.2d 544, 26 A.L.R.2d 979].) Because the record is incomplete on this point, the judgment must be reversed. (*Borges* v. *Home Insurance Co.* (1966) 239 Cal.App.2d 275, 284 [48 Cal.Rptr. 540].) "Enough has been pointed out to indicate that even on the admitted evidence there is enough to indicate different probabilities as to what the ultimate facts are depending upon what inferences are drawn. This evidence must be resolved by the trier of fact, in a trial on the merits, before this court can determine what issues of law are involved." (*Ibid.*; also see *Moss Dev. Co.* v. *Geary* (1974) 41 Cal.App.3d 1, 15 [115 Cal.Rptr. 736].) We explain.

In *Estate of Hart, supra,* 135 Cal.App.3d 684, this court was faced with the task of sorting out the consequences of a spousal murder/suicide. Husband shot his wife and then himself; both died intestate, owning joint tenancy property and life insurance policies on the lives of each. The life insurance policies had been purchased during the marriage with community funds and consequently were community property. In analyzing the question of the entitlement of the estate of the deceased slayer to a community interest in the life insurance policy on the wife, we concluded "the perpetrator spouse's community interest in the insurance policies is one-half of the cash surrender value of the policies on the life of the wife immediately before the commission of the wrongful act." (*Id.* at p. 693.) The remainder of the proceeds, minus this one-half of the cash surrender value, went to the estate of the wife.

Also in *Estate of Hart, supra,* 135 Cal.App.3d 684, we were required to decide which party was entitled to the proceeds of a life insurance policy on

the life of the husband. The named contingent beneficiary (after the slain wife) was the father of the slayer-spouse. We held that absent any evidence before the trial court that the wife had consented to or received any consideration for the naming of the husband's father as the contingent beneficiary, the conclusion was warranted that the husband had no authority to make a gift of the wife's one-half community interest in that policy. Accordingly, the entitlement to those policy proceeds was one-half of the proceeds of the policy on the husband to the estate of the deceased wife, while the contingent beneficiary (the father of the slayer-spouse) was entitled to the remaining one-half. (*Id.* at p. 693.)

■ Under the authority of *Estate of Hart, supra*, 135 Cal.App.3d 684, it is clear that some community interest of a slayer-spouse is preserved in life insurance policies on the life of the deceased spouse. Here, however, the slayer-spouse, Roberta, has assigned all her interests in the policy to the contingent beneficiary, Miles.[5] ■ *Hart* is thus not dispositive on the main issue presented in this case: the validity of the deceased spouse's designation as contingent beneficiary, before his death, of the sister of the spouse who would eventually kill him. The estate asks this court to establish a rule that in all cases a designation of a contingent beneficiary is invalid where that beneficiary is a possible intestate donor to the killer of the deceased spouse. Section 252 (see fn. 3, *ante*), while specific on the manner in which a slayer-beneficiary should be treated, is silent on the question of the rights of a relative of the killer who is also a named successor beneficiary of a life insurance policy.

The California Law Revision Commission comment to section 252 states that under sections 252 and 253, "if the killer is treated as having predeceased the decedent for the purpose of life insurance or other contractual benefits, the killer's heirs are similarly disqualified." We believe this comment was intended to address the potential situation of the heirs of the killer obtaining insurance proceeds through inheritance from the killer, solely by virtue of their family relationship with the killer (as opposed to a relationship with the deceased). Section 252 and the comment were not intended to impose a blanket prohibition, on moral or other grounds, that would prevent a relative of a killer from taking insurance proceeds as a contingent beneficiary where the primary beneficiary is ineligible as a result of the killing.

In contrast, we are presented with a fact pattern in which the deceased person indicated his intent that a relative of his spouse (a spouse who would

---

[5]Should the estate obtain some award of policy proceeds on remand, it would appear under section 250 that Miles is entitled by virtue of this assignment to Roberta's preserved community interest (according to the Cal. Law Revision Com. com. to § 250, subd. (a)(2); see Civ. Code, § 5105).

someday prove murderous) should directly benefit from his death through designation as a contingent beneficiary. With respect to these facts, *Beck* v. *West Coast Life Ins. Co.*, *supra*, 38 Cal.2d 643, 646-647 is the guiding authority.

In *Beck* v. *West Coast Life Ins. Co.*, *supra*, 38 Cal.2d 643, 646-647, a husband who killed his wife was the primary beneficiary of her life insurance policy, and had been designated as such by the wife before her death. As an alternative beneficiary, the wife had designated a personal friend. (*Id.* at p. 644.) Because of the slayer-husband's inability to take the policy proceeds, the Supreme Court was required to determine whether they should be paid to the named alternative beneficiary, the wife's friend, or to the estate of the insured, the deceased wife. The Supreme Court set forth three possible solutions to the question of the rights of the estate of the insured and the alternative beneficiary. (*Id.* at p. 646.) The alternatives were (1) the estate of the insured, (2) a choice made on the basis of mortality tables and a determination of the person or persons who would be most likely to take had the murder not been committed, or (3) allowing the alternative beneficiary to recover the proceeds. (*Ibid.*) In adopting the latter solution, the court explained:

"Because the beneficiary clause of a life insurance policy in which the insured has reserved the right to change beneficiaries is donative and testamentary in character [citations], the intent of the insured as expressed by the language that she used should be given effect so far as possible. [Citations.] Although her expressed intent that her husband [the killer] receive the proceeds cannot be given effect, the policy names the one she wished to take if her husband could not. It stated that the proceeds should be paid to the alternative beneficiary, if the primary beneficiary predeceased the insured. Thus, in the type of disability that would naturally be anticipated by the insured, the alternative beneficiary was preferred over the estate of the insured." (*Beck* v. *West Coast Life Ins. Co.*, *supra*, 38 Cal.2d at pp. 646-647.)

Thus, in *Beck* v. *West Coast Life Ins. Co.*, *supra*, 38 Cal.2d 643, 646-647, the Supreme Court ruled that in order to effectuate the intent of the insured, the policy proceeds must be awarded to the alternative beneficiary. In discussing the effect of a contrary holding on the interests of the parties involved, the court commented:

"The rule that prevents [the killer from] profiting by his own wrong should not be invoked in such a way as to prejudice the rights of the alternative beneficiary. 'In a word, it appears to me that the crime of one person may prevent that person from the assertion of what would otherwise

be a right, and may accelerate or beneficially affect the rights of third persons, but can never prejudice or injuriously affect those rights.' [Citations.]" (*Beck* v. *West Coast Life Ins. Co., supra,* 38 Cal.2d at p. 647.)

In related federal court proceedings concerning the same spousal slaying as in *Beck* v. *West Coast Life Ins. Co., supra,* 38 Cal.2d 643, the Ninth Circuit Court of Appeals was required to construe another life insurance policy on the life of the deceased wife, which named her husband as primary beneficiary and named his mother, the deceased's mother-in-law, as contingent beneficiary. (*Beck* v. *Downey* (9th Cir. 1951) 191 F.2d 150 (revd. 343 U.S. 912 [96 L.Ed. 1328, 72 S.Ct. 646]); on remand *Beck* v. *Downey* (9th Cir. 1952) 198 F.2d 626.) In those proceedings, the Ninth Circuit found that under the applicable Colorado state law,[6] the contingent beneficiary was not entitled to take the proceeds of the policy because the condition precedent, of the husband's being not "living" at the time of the death of the insured, had not been satisfied. In a concurring opinion in the later report of the case, Judge Fee made the following observations:

"In this case, over and beyond all else, there is the murderer as primary beneficiary and the murderer's mother as the alternate. If judicial policy dictates that he cannot take directly, no technical consistency should permit him to benefit indirectly by a gift to his family, especially a mother, from whom he would normally acquire property by the statutes of descent and distribution. The policy is pronounced that neither he nor any who takes through him or for his benefit should be recognized." (*Beck* v. *Downey, supra,* 198 F.2d at p. 628.)

Thus, opposite results were reached in the California state case, *Beck* v. *West Coast Life Ins. Co., supra,* 38 Cal.2d 643, and the federal cases discussed above, where different insurance policies and different state laws were involved, and where the contingent beneficiaries were associated, in the one case, with the victim, and in the other, with the slayer-spouse. However, in the federal case, where the victim's mother-in-law was not allowed to inherit, the primary basis of the decision was the doctrine of the condition precedent, not a concern with effectuating the intent of the insured person.

In a case involving inheritance taxes due after a spousal murder/suicide situation (*Estate of Jeffers, supra,* 134 Cal.App.3d 729), the court refused to give effect to the slayer-spouse's designation of an alternative beneficiary for

---

[6]The murder and the husband's imprisonment took place in Colorado, which did not have a doctrine of "civil death" of life convicts. (*Beck* v. *Downey, supra,* 191 F.2d at p. 153.) Accordingly, the court was not authorized to treat him as civilly dead, as would now have been possible under California law. (§ 252.)

the receipt of life insurance proceeds (a trust for her children) in view of her conduct in killing the insured, her husband. The court made the comment, "The crucial fact is that, . . . the primary beneficiary who killed the insured should be denied the right *by any means* to specify the recipient of the insurance proceeds and thereby profit from his own wrong." (*Id.* at p. 736, original italics.)

In the case before us, the estate argues that Roberta's assignment of her interests to Miles, as well as the mere fact of their blood relationship, show the possibility that any award of policy proceeds to Miles would cause Roberta to profit by her wrong. This argument, however, disregards the fact that it was the deceased spouse, Wayne, who named Miles as his contingent beneficiary. The Supreme Court in *Beck* v. *West Coast Life Ins. Co., supra,* 38 Cal.2d 643, cautioned against any analysis which would prejudice the rights of innocent third parties due to the bad acts of a killer. No facts have been presented showing any suspicion that Miles was in any way in complicity in this killing. Accordingly, this record would not permit the making of any broad rule, as requested by the estate, concerning the invalidity of any potential intestate donor as a contingent beneficiary.

Instead, we believe the proper analysis is that set forth in *Beck* v. *West Coast Life Ins. Co., supra,* 38 Cal.2d 643, 646-647. This analysis inquires into the actual intent of the insured party in naming his or her primary and contingent beneficiaries. There is no evidence in the record about the nature of Wayne's relationship with his sister-in-law Miles, nor about whether his pending dissolution proceedings with Roberta affected his feelings for her. There was a domestic restraining order in effect at the time of Wayne's death which prevented him from changing his beneficiary designation of his life insurance policies. Violation of such an order could have led to contempt proceedings. (Code Civ. Proc., § 1209, subd. (a)(5).)

Under these facts, we are unable to rule as a matter of law that Wayne's donative intent was clearly demonstrated by the terms of the policies purchased years before his death. Nor are we able to say that Miles, by virtue of her relationship with Roberta, is disqualified as a matter of fact or law from receiving the proceeds of the policies as a contingent beneficiary. The language of section 252 providing that policy proceeds become payable "as though the killer had predeceased the decedent" is instructive only as to inheritance through the killer, as in the case of intestate or testamentary succession. This statute is not dispositive on the issue of a person independently designated by the insured as a contingent beneficiary. Thus, on a showing that even a person related to the killer had an independent relationship of some kind with the deceased, sufficient to support an inference that the deceased would have intended that policy proceeds should go to such a

person, a judgment or order awarding such proceeds to such a contingent beneficiary might be proper.[7] This record, however, is insufficient to support any such order, or to support any award of policy proceeds to Wayne's estate. Factual issues remain to be resolved before the intent of the insured to distribute the proceeds of the insurance policies can be ascertained. (*Beck* v. *West Coast Life Ins. Co., supra,* 38 Cal.2d 643, 646-647.)

DISPOSITION

Summary judgment is reversed.

Nares, J., concurred.

**FROEHLICH, J.,** Concurring.—I concur in the ruling of the majority, which is to reverse the summary judgment and remand the case for further proceedings and trial, if appropriate. I do not join in the reasoning of the majority opinion because I believe it is misplaced in its emphasis on a search for the hypothetical, presumed, or to be discovered donative intent of the deceased insured. Rather, I believe the review of evidence should focus on an attempt simply to prevent enrichment of the murderer by reason of her crime. If there is no evidence of such enrichment through execution of the plain terms of the policy, then those terms should be followed.

In *Beck* v. *West Coast Life Ins. Co.* (1952) 38 Cal.2d 643, 647 [241 P.2d 544, 26 A.L.R.2d 979], the court awarded the life insurance proceeds to an alternate beneficiary (not related to the primary beneficiary who had murdered the insured) because such was the clear intent of the deceased. The literal wording of the beneficiary clause was such as to transfer to the unrelated friend the policy benefits in the event the insured's husband could not receive them. The reason for award of the policy benefits to the alternative beneficiary was not the predecease of the husband, which would have been expected by the insured based on the beneficiary designations. The husband was precluded from taking not because of his prior death, but because of the equitable doctrine preventing one from benefiting from his own wrong. This unexpected cause for activating the alternative nomination in no way, however, invalidated it.

It is to be noted that the "intent" relied upon in Beck was the intent of the insured at the time of execution of the policy beneficiary provision. Such is entirely in accord with ordinary contract construction principles.[1] The opin-

---

[7]In that event, a trial court would be required under section 252 to make appropriate orders, such as those that were made in this case, requiring the contingent beneficiary to segregate the policy proceeds from any funds that might ever become accessible to the killer.

[1]Insurance policies are contracts (Ins. Code, § 22) and are interpreted in accordance with contract principles (*Boyer* v. *United States F. & G. Co.* (1929) 206 Cal. 273, 276 [48 Cal.Rptr. 540]). The guiding principle is the intention of the parties as expressed at the time of policy

ion of the majority would appear to require the trial court to look into the intent of the insured illuminated by events occurring after the execution of the beneficiary designation. Indeed, by referring to the domestic restraining order in effect at the time of his death, the majority appears to require the trial court to speculate as to what action the deceased would have taken absent the order.

If we were to follow *Beck* literally in this case we would be required to award the policy benefits (less the community interest in the cash surrender value as it existed prior to death, as per *Estate of Hart* (1982) 135 Cal.App.3d 684 [185 Cal.Rptr. 544]) to the contingent beneficiary, Miles. The decedent by his designation of beneficiary chose Miles to receive the policy benefits in the event of the predecease of his wife, and under Probate Code section 252 because of the murder the policy benefits must be paid "as though the killer had predeceased the decedent."

In my view the case is controlled by the principle that the murderer can in no manner be benefited by her own crime. The application of this principle to the facts of this case is best described by the comments of Judge Fee in *Beck* v. *Downey* (9th Cir. 1952) 198 F.2d 626, 628, quoted at length in the majority opinion. The central theme of the effort is to prevent enrichment as the result of one's own wrong. If the result of this effort is to preclude the receipt of benefits by an otherwise innocent third party, so be it. (Cf. *Meyer* v. *Johnson* (1931) 115 Cal.App. 646, 650 [2 P.2d 456]: ". . . personal representatives of murderously inclined beneficiaries [may not] take money made bloody by the slaying of those inclined to generosity.")

In my view, therefore, the proper inquiry at trial of this matter will be whether and to what extent the implementation of the alternative beneficiary provision in the murdered decedent's insurance policy will benefit, or will represent the objectives of, the murderer. Evidence as to the original motivation for naming Miles the alternative beneficiary would be instructive. If it can be shown, for instance, that Miles's designation was the result of the importuning of Roberta, the murderer, then the award of the insurance proceeds to Miles might well be conceived by the court as violative of the prohibition against rewarding the objectives of the wrongdoer.

In any event, I concur in the conclusion that this was not a case to be resolved by summary judgment, and that its ultimate determination will

---

execution. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 271 [419 P.2d 168]; *Protex-A-Kar Co.* v. *Hartford Acc. etc. Co.* (1951) 102 Cal.App.2d 408, 412 [227 P.2d 509].) This rule is applicable to provisions designating beneficiaries. (*Turner* v. *Metropolitan Life Ins. Co.* (1943) 56 Cal.App.2d 862 [133 P.2d 859]; 39 Cal.Jur.3d, Insurance Contracts, § 464, pp. 783-784.)

better be made after a full investigation of the facts. In my opinion the relevant facts are those that disclose both the motivation and the objectives sought, and who was seeking them, in the original designation of Miles as alternate beneficiary.

A petition for a rehearing was denied October 31, 1991.