[No. C011141. Third Dist. Aug. 28, 1992.]

NATIONAL AUTOMOBILE & CASUALTY INSURANCE COMPANY,
Plaintiff and Appellant, v.
LORRIE UNDERWOOD et al., Defendants and Respondents.

[No. C012345. Third Dist. Aug. 28, 1992.]

NATIONAL AUTOMOBILE & CASUALTY INSURANCE COMPANY,
Plaintiff and Appellant, v.
LORRIE UNDERWOOD, Defendant and Respondent.

34

**COUNSEL**

Halkides & Morgan, Dean R. Lueders and Arthur L. Morgan for Plaintiff and Appellant.

Meek & Swartz, Russell J. Swartz and William L. Meek for Defendants and Respondents.

OPINION

DAVIS, J.—This case concerns an automobile liability insurance policy that excludes coverage for bodily injury to an insured as well as to the residents of the insured's household, and how that exclusion affects injured children of divorced parents.

National Automobile & Casualty Insurance Company (National) appeals from summary judgments in favor of Bruce Bonner (Bruce) and Lorrie Underwood (Lorrie) and from the denial of its motion for summary judgment. We affirm.

BACKGROUND

On March 23, 1989, Lorrie was involved in an automobile accident that resulted in injuries to her two children who were riding as passengers. Bruce, Lorrie's ex-husband and the children's father, filed suit individually and on the children's behalf against Lorrie. Lorrie's insurance company, National, filed a declaratory relief action against Lorrie and Bruce asserting it had no duty to indemnify or defend Lorrie under her policy. Lorrie's policy excluded coverage for bodily injury to an insured. The policy defined an insured as "the named [i]nsured and any resident of the same household." National claimed the children were excluded under the policy, as they were residents of Lorrie's household.

Lorrie and Bruce divorced in December of 1987. Around the time of the accident, the two of them shared legal and physical custody of their children pursuant to a court-sanctioned custody agreement. The agreement designated Bruce as the children's "primary caretaker." The children usually lived with Bruce and attended school full time in Shasta County. Lorrie lived in Tehama County. The children stayed with Lorrie every other weekend; in addition they spent alternate Thanksgivings, half their Christmas and Easter school vacations, and 10 weeks during the summer with her. At the time of the accident, the children were on their Easter vacation and were with Lorrie pursuant to the custody agreement. The children had arrived at Lorrie's residence the day before the accident.

Lorrie lived in a two-bedroom apartment at the time of the accident. The children slept in the second bedroom when they stayed with her. They kept

a few personal items at Lorrie's apartment, such as clothes, toys, and toothbrushes. The bedroom which the children used was not decorated in any specific manner and was used for storage in addition to sleeping quarters.

In response to National's declaratory relief action, Bruce moved successfully for summary judgment on the ground that the children were not residents of Lorrie's household at the time of the accident. The court found there were no factual disputes over the living arrangements of the children. Reading the exclusionary clause as a layperson would, the court held this was a situation where the children "resided" with Bruce and were visiting Lorrie at the time of the accident. Accordingly, the court found, as a matter of law, that the children were not "residents" of Lorrie's household and the exclusion therefore did not apply. Additionally, the court reiterated the rule that any ambiguity or uncertainty in an insurance policy should be interpreted against the insurer.

Subsequently, Lorrie and National each moved for summary judgment. Using the reasoning employed on Bruce's motion, the trial court granted Lorrie's motion and denied National's. The appeals from these judgments adverse to National were consolidated by order of this court.

## STANDARD OF REVIEW

■ Summary judgment is proper if there is no triable issue of material fact and the moving party is entitled to summary judgment as a matter of law. (Code Civ. Proc., § 437c.) Summary judgment may not be granted unless the supporting papers show there is no triable issue of material fact. (*Safeco Ins. Co. v. Gibson* (1989) 211 Cal.App.3d 176, 179-180 [259 Cal.Rptr. 206].) ■ The interpretation of an insurance policy, like any other contract where there is no conflicting extrinsic evidence, is a matter of law for the reviewing court's independent determination. (*Cal-Farm Ins. Co. v. TAC Exterminators, Inc.* (1985) 172 Cal.App.3d 564, 571 [218 Cal.Rptr. 407].)

## APPROPRIATENESS OF SUMMARY JUDGMENT

National argues that because the underlying facts could indicate different possible outcomes, summary judgment is inappropriate. It bases this argument on *State Farm Life Ins. Co. v. Pearce* (1991) 234 Cal.App.3d 1685 [286 Cal.Rptr. 267]. *Pearce*, however, differs from the case before us; in *Pearce* factual issues remained for resolution. In the present case the facts are undisputed. The only question here is the legal effect of these facts.

This case is akin to *United Services Automobile Assn. v. Baggett* (1989) 209 Cal.App.3d 1387 [258 Cal.Rptr. 52], where the court stated that "[i]nterpretation of [an] insurance policy presents a question of law which we

answer independently [when] the trial court's interpretation *did not depend on conflicting extrinsic evidence.*" (*Id.* at p. 1391, italics added.) If we were to follow National's argument, any time conflicting inferences could be drawn, summary judgment would be inappropriate, even if no factual dispute was involved. But the California Supreme Court made it clear in *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839], that it is only when conflicting inferences arise from conflicting evidence, not from uncontroverted evidence, that a trial court's interpretation of a written instrument is binding. (*Id.* at p. 866, fn. 2.) " 'The very possibility of . . . conflicting inferences, actually conflicting interpretations, far from relieving the appellate court of the responsibility of interpretation, signalizes the necessity of its assuming that responsibility.' [Citation.]" (*Ibid.*) As the court in *Baggett* noted, "[i]t is a question of law whether an insurance policy is ambiguous by virtue of being susceptible to two or more reasonable interpretations." (209 Cal.App.3d at p. 1391.)

Pursuant to these principles, we find that summary judgment was an appropriate procedure here. Although the inferences drawn from the facts could differ, the facts themselves are undisputed. (Code Civ. Proc., § 437c.)

### LIABILITY OF NATIONAL

The pertinent provisions of the National policy are as follows:

"**PART I—**
**PROTECTION AGAINST LIABILITY, MEDICAL EXPENSE, UNINSURED MOTORISTS AND ACCIDENTAL DEATH BENEFIT**

"**LIABILITY COVERAGE:** The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, arising out of the ownership, maintenance or use of an owned automobile or a non-owned automobile, and the Company shall defend any suit alleging such bodily injury or property damage and seeking damages which are payable under the terms of this policy, even if any of the allegations of the suit are groundless, false or fraudulent; . . .

"**Persons Insured:** Under the Liability and Medical Expense Coverages, the following are Insureds:

(1) with respect to an owned automobile,

  (A) the named Insured and any resident of the same household, . . .

"**Definitions:** When used with respect to Part I; . . .

'**insured**' means a person or organization described under 'Persons In-sured'; . . .

"**Exclusions:** This policy does not apply; . . .

"Under the Liability . . . Coverage, [] . . .

(9) to bodily injury to an Insured, . . . ."

In *Reserve Insurance Co.* v. *Pisciotta* (1982) 30 Cal.3d 800 [180 Cal.Rptr. 628, 640 P.2d 764], our Supreme Court set forth the established principles we use to interpret insurance policies. ▮ "Words used in an insurance policy are to be interpreted according to the plain meaning which a lay[per-son] would ordinarily attach to them. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists. [Citations.]

▮ ▮ "On the other hand, 'any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer and . . . if semantically permissible, the contract will be given such construction as will fairly achieve its object of providing indemnity for the loss to which the insurance relates.' [Citations.] The purpose of this canon of construction is to protect the insured's reasonable expectation of coverage in a situation in which the insurer-draft[er] controls the language of the policy. [Citations.] ▮ Its effect differs, depending on whether the language to be construed is found in a clause providing coverage or in one limiting coverage. 'Whereas coverage clauses are interpreted broadly so as to afford the greatest possible protection to the insured [citations], exclusionary clauses are interpreted narrowly against the insurer. [Citations.]' [Citations.] '[A]n insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear. As we have declared time and again, "any exception to the performance of the basic underlying obligation must be . . . stated . . . clearly to apprise the insured of its effect" [citation]; thus, "the burden rests upon the insurer to phrase exceptions and exclusions in clear and unmistakable language." . . .' [Citation.]" (30 Cal.3d at pp. 807-808).

The interpretation of the word "resident" as used in National's policy turns on whether that word is ambiguous in the particular context of children of divorced parents presented here. If "resident" is found to be ambiguous in this context, settled principles dictate that the term be construed against National and in favor of the insured. (See *Pisciotta, supra,* 30 Cal.3d at p. 808.)

A policy provision is ambiguous if it is capable of at least two reasonable constructions. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920].) We believe the term "resident" used in the exclusion clause at issue here is capable of at least two reasonable constructions when applied to the joint custody setting of this case.

The term "resident" has been defined by courts in various ways in the insurance context. (See e.g., *Safeco, supra,* 211 Cal.App.3d at p. 181; *Jacobs* v. *Fire Ins. Exchange* (1991) 227 Cal.App.3d 584, 591 [278 Cal.Rptr. 52], [cases cited at fn. 3].) For example, some cases define resident using Government Code section 244, which states ". . . (b) [t]here can only be one residence" and "(d) [t]he residence of the parent with whom an unmarried minor child maintains his or her place of abode is the residence of such unmarried minor child." (See e.g., *Allstate Ins. Co.* v. *Smith* (1970) 9 Cal.App.3d 898 [88 Cal.Rptr. 593]; *Northwestern National Casualty Co.* v. *Davis* (1979) 90 Cal.App.3d 782 [153 Cal.Rptr. 556]; see also Welf. & Inst. Code, § 17.1.) Government Code section 244 states rules that determine a place of residence in defining the people of California for sovereign purposes. Other cases recognize that a person may have several residences at the same time and for different purposes. (See *Hardware Mutual Casualty Co.* v. *Home Indemnity Co.* (1966) 241 Cal.App.2d 303, 311-312 [50 Cal.Rptr. 508]; see also *In re Morelli* (1970) 11 Cal.App.3d 819, 830-831 [91 Cal.Rptr. 72]; *Smith* v. *Smith* (1955) 45 Cal.2d 235, 239 [288 P.2d 497].) Along this line, the court in Safeco agreed with the trial court's statement there that " '[w]hen dealing with an unemancipated, unincarcerated minor child of divorced parents, [the idea] that the child may have a dual residence does not appear to be an illogical, unwarranted or unjustified notion.' " (*Safeco, supra,* 211 Cal.App.3d at p. 184.)

The court in *Safeco* tried to harmonize this muddled area by explaining that the "common thread that runs through [the cases interpreting 'resident' and 'household'] is not whether the terms 'residence' or 'member of the household' are themselves inherently ambiguous, but whether, under the particular facts of each of those cases, insurance coverage was extended or excluded under the terms of the policy in question." (211 Cal.App.3d at p. 181.) In similar fashion, the court in *Cal-Farm Ins. Co.* v. *Boisseranc* (1957) 151 Cal.App.2d 775 [312 P.2d 401], reviewed many cases dealing with the issue of who is a resident of a household for insurance purposes. The court noted that the cases could be roughly divided between those involving insurance policies excluding from coverage members of the insured's household, and those extending coverage to such persons. (*Id.* at pp. 781-782.) The *Boisseranc* court noted that "in the extension cases the questioned terms

[resident and household] are broadly interpreted, while in the exclusion cases the same terms are given a much more restricted interpretation." (*Id.* at p. 782.) The court concluded that "[t]hese cases illustrate that the interpretation of the terms involved is not fixed but varies according to the circumstances of the case. They also demonstrate that most courts will interpret the terms so as to extend the coverage if this can be done under any reasonable interpretation of the facts." (*Id.* at p. 783).

In line with these statements from *Safeco* and *Boisseranc*, we examine the particular circumstances of the case before us and adhere to the basic principles of insurance contract interpretation. Doing so, our focus becomes whether the "residency" of Bruce and Lorrie's children is capable of at least two reasonable constructions. If so, the exclusion clause here is to be construed in a manner favoring coverage.

One reasonable construction is that the children have a single residence and that is with their father, Bruce. It is undisputed the children spend far more time with Bruce than with Lorrie. At the time of the accident, the children were spending 24 to 25 days a month with Bruce, and only 5 to 6 days a month with Lorrie. The children also attended school while maintaining their residency at Bruce's household. In fact, Lorrie lived in a different county at the time of the accident. Moreover, Bruce was designated the "primary caretaker" under the custody decree. Although custody decree designations are not determinative, they can be considered in determining the residency of the children. (See *Boisseranc, supra,* 151 Cal.App.2d at p. 781; *Safeco, supra,* 211 Cal.App.3d at pp. 181-182.) We believe a layperson, knowing all these undisputed facts, could reasonably deem the children to be residents of Bruce's household. And if one had to choose a single residence for the children, Bruce's household would be the logical choice.

On the other hand, one could reasonably read "resident" in a more literal sense to mean where these children were physically residing at the time of the accident, which was with Lorrie. (See *Safeco, supra,* 211 Cal.App.3d at p. 184.) After all, at the time of the accident Lorrie shared joint custody of the children with Bruce, and the children were then with her pursuant to the custody decree.

Another reasonable construction would be that the children, at the time of the accident, had dual residences with Bruce and Lorrie. (See *Safeco, supra,* 211 Cal.App.3d at p. 184.) This construction would exclude coverage to the same extent as if the family had remained intact under one roof.

Any of these three interpretations of "resident" would be reasonable. But, as stated in *Island* v. *Fireman's Fund Indemnity Co.* (1947) 30 Cal.2d 541,

548 [184 P.2d 153], "[a] cardinal rule of interpretation is that, where a provision of an insurance policy is susceptible of two constructions, it should be construed most strongly in favor of the policyholder." Pursuant to this principle, we adopt the interpretation that the children were not residents of Lorrie's household at the time of the accident. If children of a divorced insured are to be excluded under the policy in the same fashion as children of an intact family under one roof, the insurer should make that clear in its policy. The fact is this case exemplifies a common joint custody arrangement of school-age children who spend vastly different amounts of time at each parent's house. Lacking a more explicit definition of "resident," an insurer must accept liability under any reasonable interpretation of the words it uses. (*Reserve Insurance Co.* v. *Apps* (1978) 85 Cal.App.3d 228, 232 [149 Cal.Rptr. 223]; *Boisseranc, supra,* 151 Cal.App.2d at p. 780.) This resolution follows from the well-settled doctrines stated previously.

National claims that *Safeco, supra,* 211 Cal.App.3d 176, is directly on point here. In *Safeco*, a boy was riding in a car with his divorced father and was fatally injured in an accident. (211 Cal.App.3d at p. 178.) The boy's mother filed a wrongful death action against the father. (*Id.* at p. 179.) The minor boy's parents in Safeco, like the children's parents here, shared joint physical and legal custody of him. (*Id.* at p. 178.) The custody agreement listed the mother's house as the boy's primary place of residence, but the court found this listing alone was not determinative. (211 Cal.App.3d at pp. 181-182.) The court held that the insurance company had no duty to indemnify or defend the father because the boy was a resident of the father's household and therefore excluded under the father's policy. (*Id.* at p. 184.) The court based its decision on the fact that the boy spent "a substantially equal amount of time" with his father and mother. (*Id.* at p. 178.) Without variation, each week the boy stayed with his father from Sunday evening to Wednesday morning, and with his mother from Wednesday afternoon to Sunday evening. (*Id.* at p. 184.)

National claims the facts between *Safeco* and this case are identical and therefore the result should be identical. We disagree. Although both the child in *Safeco* and the children in the present case were held in joint physical and legal custody, they did not spend the same amount of time with their parents. As we have seen, the children here, unlike the child in *Safeco*, did not spend "a substantially equal amount of time" on a regularly rotating basis with Bruce and Lorrie. (211 Cal.App.3d at p. 178.) They spent the vast majority of their time with Bruce. And this is a distinction with a difference given the *Safeco* court's justified emphasis on this fact when considering the issue of residency. (211 Cal.App.3d at pp. 178, 184.)

In finding the term "resident" ambiguous as used in this policy and construing the exclusion narrowly against the insurer, we are not only

following the well-established principles applicable to the interpretation of insurance policies, we are furthering the reasons for those principles. Ambiguous insurance provisions are interpreted in a way to protect the reasonable expectations of the insured where the insurer-drafter controls the language of the policy. (*Pisciotta, supra,* 30 Cal.3d at p. 808.) We realize that if Lorrie and Bruce were still married and their children lived with both of them all the time, without question the children would be deemed residents of their parents' household and the exclusion clause would apply. There would be no ambiguity in this situation. However, that is precisely not the situation now that Lorrie and Bruce are divorced and maintaining separate households. The children are not with Lorrie all the time, a majority of the time, or even much of the time. Given these ambiguities, Lorrie could reasonably expect the children to no longer be considered residents of her household. True, Lorrie's parental status has not changed with the divorce. But what has changed with the divorce is the residential status of the children—the very fact implicated by the exclusion clause at issue here. As the California Supreme Court stated in *Island*, "[i]f the insurer intended to restrict its coverage to the extent of its defense in the present case, it should have used language clearly stating that purpose." (30 Cal.2d at 548.)

■ National alternatively argues that if the term "resident" is found to be ambiguous, it cannot be construed against the insurer as a matter of law. The foundation for this argument is found in *State Farm Mut. Auto. Ins. Co.* v. *Messinger* (1991) 232 Cal.App.3d 508 [283 Cal.Rptr. 493]. In that case, this court stated that where the insurance policy language used is that of the Legislature, the language " 'must be construed to implement the intent of the Legislature and should not be construed strictly against the insurer . . . .' [Citation.]" (*Id.* at p. 519.)

Unfortunately for National, just because its insurance policy uses language that happens to be mentioned somewhere in the Insurance Code, this does not qualify the language as that of the Legislature regarding the specific issue before us. What qualifies as language of the Legislature are standard form insurance policies which are required by statute (*Prudential-LMI Com. Insurance* v. *Superior Court* (1990) 51 Cal.3d 674, 682 [274 Cal.Rptr. 387, 798 P.2d 1230] [California Standard Form Fire Insurance Policy]; *Ichthys, Inc.* v. *Guarantee Ins. Co.* (1967) 249 Cal.App.2d 555, 558 [57 Cal.Rptr. 734] [same]); provisions taken directly from statutory language which address the exact issue addressed by the provision in the policy (*Interinsurance Exchange* v. *Marquez* (1981) 116 Cal.App.3d 652, 655-656 [172 Cal.Rptr. 263] [Ins. Code, § 11580.2, subd. (h)(1)]); or a specific insurance policy definition which conforms in every material respect to the language used in

the subdivision of the code which is being interpreted (*Messinger, supra,* 232 Cal.App.3d at p. 519 [Ins. Code, § 11580.2, subd. (p)(2)]).

Insurance Code section 11580.1, subdivision (c), sets forth, in general fashion, the exclusions which "may, by appropriate policy provision," be included in automobile liability policies. One of those permitted general exclusions is authorized by section 11580.1, subdivision (c)(5), which provides: "[l]iability for bodily injury to an insured or liability for bodily injury to an insured whenever the ultimate benefits of that indemnification accrue directly or indirectly to an insured." In its policy, National chose to exclude liability coverage only for "bodily injury to an insured." And then National defined "insured" to include "any resident of the same household." However, nowhere in Insurance Code section 11580.1, subdivision (c)(5), is there mention of "resident of the same household." National claims it is clear in the code section that the Legislature intended the term "insured" to include "relatives who are residents of the insured's household." Even if National is correct, this does not help to define "resident" in the context presented here. There appears to be no similarity between the relevant language here and the other types of language listed above which the courts have found to be that of the Legislature.

### REQUEST FOR ATTORNEY FEES

■   Bruce has requested attorney fees on appeal, claiming that National's appeal is not in good faith, is frivolous, and is designed to delay ultimate resolution of the issue. We disagree.

Bruce's argument that his judgment of April 3, 1991, resolved all issues in the case and made any further litigation moot is unfounded. Initially only Bruce secured summary judgment in National's declaratory relief action; Lorrie at that time remained a party to that action. After the judgment in Bruce's case, Lorrie filed for summary judgment, and National followed with its own motion for summary judgment. We do not believe this was done in bad faith, but merely as a formality to have final judgments regarding both parties.

Although we have decided to affirm the trial court's decision, this does not mean National's appeal was frivolous or in bad faith. Quite to the contrary. The issue presented in this case has not been squarely addressed in California before and National cannot be faulted for pursuing it. Bruce's request for attorney fees is denied.

## DISPOSITION

The judgments are affirmed. Appellant is ordered to pay respondents' costs on appeal.

Sims, Acting P. J., and Scotland, J., concurred.