Gloria PERKINS, Plaintiff,

v.

**ALLSTATE INSURANCE CO.,
et al., Defendants.**

No. CV 98–9629 AHM.

United States District Court,
C.D. California.

June 17, 1999.

Girardi Keese, Los Angeles, CA, for Plaintiff.

Lewis, D'Amato, Brisbois & Bisgaard LLP, Richard B. Wolf, Elise D. Klein, Raquel Vidal, Los Angeles, CA, for Defendants.

## ORDER DENYING THE ALLSTATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MATZ, District Judge.

This is an action seeking insurance coverage for injuries Plaintiff sustained in an automobile accident. On October 22, 1998, Plaintiff filed her complaint in Los Angeles County Superior Court against Defendants Allstate Insurance Co., Allstate Indemnity Co. (collectively referred to as "Allstate"), Rex L. Barnett and Karen Bonneau. The complaint alleges two causes of action: (1) Breach of Contract (insofar as Allstate failed to defend its insured); and (2) Breach of the Implied Covenant of Good Faith and Fair Dealing (based upon Allstate's alleged wrongful refusal to settle and defend the underlying action against its insured).

This matter is currently before the Court on Allstate's motion for summary judgment. The Court has reviewed the papers submitted, the file in this case and oral argument of counsel. Good cause appearing therefor, the Court denies Allstate's motion.

### I.

### PRIOR PROCEEDINGS

On December 1, 1998, Allstate removed this case on diversity grounds, arguing that the California citizenship of Defendants Barnett and Bonneau should be disregarded because Plaintiff cannot establish liability against either of them. On December 11, 1998, Allstate filed a motion to

dismiss Barnett and Bonneau. Because Allstate failed to comply with Local Rule 7.4.1's meet and confer requirement, the Court struck that motion by order filed December 23, 1998. Thereafter, Plaintiff voluntarily dismissed Barnett and Bonneau on January 26, 1999.

## II.

### FACTS

The parties do not dispute any of the facts in this case.

In 1992, Plaintiff and Homer Battle married. Since 1993, Plaintiff has consistently resided at the couple's Glen Creek, Cerritos, residence, while Battle has intermittently spent time in prison. Each time Battle was released from prison, he returned to reside at the Cerritos residence. During his prison stays, he continued to receive mail at that residence.

Battle had an automobile indemnity insurance policy with Allstate prior to 1994. Plaintiff was added to the policy on October 27, 1994.

On December 24, 1994, Battle was serving a perjury sentence at Tehachapi State Prison. Battle previously had given Williams, a close friend of Plaintiff, permission to drive his car. On December 24, 1994, while Williams was driving Plaintiff to visit Battle in prison, they were involved in a serious accident. After the accident, Plaintiff submitted to Allstate, and Allstate paid, a claim to recover the value of the car. Plaintiff did not, however, submit to Allstate a claim for medical benefits.

On December 18, 1995, Plaintiff brought an action against Williams and Battle. On April 18, 1996, Plaintiff's counsel sent Allstate a letter informing it of her action against Williams and making a policy limit settlement demand ($15,000 general damages and $5,000 in medical). On May 9, 1996, Allstate replied to the letter, stating that, although Williams would be considered an "insured" under Battle's policy because he was driving

with Battle's permission, Plaintiff was precluded from recovering under the policy's "resident relative exclusion" because she shared a residence with Battle. (The policy terms are detailed below.)

On January 24, 1997, Plaintiff's counsel sent a letter to Williams, informing him that default had been entered against him, requesting that he forward the summons and complaint to Battle's insurance company, Allstate, and informing him that failure to file an answer would result in Plaintiff's seeking a default judgment against him. That letter included Plaintiff's statement of damages seeking $200,000 in special damages and $1 million in general damages. Williams never contacted Allstate. (The parties do not indicate whether Williams responded to Plaintiff personally.)

Also on January 24, 1997, Plaintiff's counsel again sent to Allstate the summons and complaint Plaintiff had filed against Williams. That letter further informed Allstate that Plaintiff had served Williams with a statement of damages and that she would be seeking a default judgment if she did not receive a response to the complaint.

Neither Williams nor Allstate responded to Plaintiff's January 24, 1997 letters. On August 13, 1997, the state court held a prove-up hearing on the default and entered judgment against Williams for $1,043,963.19 plus interest. Plaintiff served a Notice of Entry of Judgment on Williams on September 4, 1997.

On December 15, 1997, Williams assigned Plaintiff all of his rights against Allstate. Plaintiff brings this action both based upon these assigned rights (which Allstate does not challenge here) and California Insurance Code section 11580.

## III.

### PERTINENT POLICY PROVISIONS

Battle's automobile indemnity policy with Allstate provided in pertinent part:

"Allstate will pay all damages an insured person is legally obligated to pay because of:

1. bodily injury, sustained by any person, and

2. damage to, or destruction of, property.

Under these coverages, your policy protects an insured person from liability from claims for accidents arising out of the ownership, maintenance or use ... of an insured auto.

We will defend an insured person sued as the result of a covered auto accident even if the suit is groundless or false...."

The policy defines "insured persons" in pertinent part as:

"1. While using your insured auto:

a) you,

b) any resident, and

c) any other person using it with your permission."

The policy defines "resident" in pertinent part as "a person who physically resides in your household with the intention of continuing residence there."

The policy defines "you" and "your" as "the policyholder named on the declarations page and that policyholder's resident spouse."

The policy's "resident relative" exclusion section provides that "Allstate will not pay for any *damages* an insured person is legally obligated to pay because of ... bodily injury to you or any resident of your household related to you by blood, marriage or adoption whenever the ultimate benefits of this coverage would accrue directly or indirectly to you or any resident of your household related to you by blood, marriage, or adoption." (Emphasis added.)

## IV.

## LEGAL STANDARDS

Fed.R.Civ.P. 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(d) permits the entry of partial summary judgment. The Supreme Court clarified the standard for summary judgment in three important cases. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. A fact is material if it could affect the outcome of the suit under the governing substantive law. *Id.* at 248, 106 S.Ct. 2505. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, its burden must be satisfied by affirmative admissible evidence. *Houghton v. South,* 965 F.2d 1532, 1536–37 (9th Cir.1992). By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex,* 477 U.S. at 325, 106 S.Ct. 2548.

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. Rule 56(e). Summary judgment will be entered

against the non-moving party if that party does not present such specific facts. *Id.*

In assessing whether the non-moving party has raised a genuine issue, its admissible evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Id.* at 252, 106 S.Ct. 2505. As the Court explained in *Matsushita:*

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

475 U.S. at 586–87, 106 S.Ct. 1348. The evidence relied upon must be admissible under the rules governing the admission of evidence generally. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542 (9th Cir.1989).

## V.

## DISCUSSION

### A. Plaintiff's Claim for Breach of Contract.

Plaintiff's Breach of Contract claim in essence alleges a cause of action belonging to Williams. It is that Allstate breached the insurance contract with Battle by failing to defend Williams, a permissive driver of Battle's auto, in Plaintiff's action against Williams. Via the assignment from Williams and under California Insurance Code section 11580, Plaintiff is entitled to sue Allstate, Battle's insurer. Allstate does not disagree that if Williams was entitled to coverage, then under section 11580, Plaintiff may bring an action against Allstate in a quasi-representative capacity, *i.e.,* based on Williams' potential claim for Allstate's failure to defend him in the state court proceeding.

◼ The sole express basis on which Allstate moves for summary judgment on Plaintiff's first claim is that it had no duty to defend Williams because there was no possibility that Plaintiff could recover under the policy.[1] This is so, Allstate argues, because Plaintiff fell within the policy's "resident relative exclusion."

Plaintiff opposes Allstate's motion, arguing that, regardless of whether Plaintiff was barred by the "resident relative" exclusion from recovering under the policy, under the separate "duty to defend" provision, Allstate was obligated to defend Williams (perhaps under a reservation of rights) until and unless (a) Allstate conducted a reasonable investigation into whether Battle and Plaintiff in fact resided together and (b) determined that they did.

---

1. Although it does not base its motion on this ground, Allstate also attempts to paint the picture that Plaintiff manipulated this case in her favor when she persuaded Williams to assign his right to sue Allstate in exchange for a covenant by plaintiff not to execute any judgment against him. Although the Court, too, is troubled by the potential appearance of collusion, such maneuvering is not unethical under California law, as the Ninth Circuit noted in *Consolidated American Ins. Co. v. Mike Soper Marine Services,* 951 F.2d 186 (9th Cir.1991). There, following the insurer's withdrawal of its defense of its insured, the insured

> entered into a stipulated default judgment with [Plaintiff] in the amount of $1 million,

which was reasonable in light of the serious injury sustained. In exchange for [Plaintiff's] covenant not to execute on the judgment, [the insured] assigned all his rights and interest against Consolidated to [Plaintiff]. [footnote]: California courts consistently hold that "an insured breaches no duty to the insurance company when he assigns his rights against the company to the injured plaintiffs in return for a covenant not to execute."

*Id.* at 190 (quoting *Samson v. Transamerica Ins. Co.,* 30 Cal.3d 220, 178 Cal.Rptr. 343, 356, 636 P.2d 32 (1981)) (and cases cited therein).

Plaintiff argues that Allstate's motion is based entirely upon facts learned during the course of discovery in this lawsuit, but that those facts are not relevant, because Allstate did not know them when it refused to defend Williams. Specifically, Plaintiff argues that while Allstate knew Battle was in prison, it never investigated whether or when he would be released or whether Plaintiff and Battle were still married. Plaintiff claims that these questions were important because, had Battle been serving a life term without possibility of parole or had Plaintiff and Battle been divorced or legally separated, the "resident relative exclusion" would not have applied. Because Allstate failed to conduct any investigation into the status of Battle's residency, Plaintiff argues that Allstate is liable for breach of the insurance contract to defend.

### 1. General Applicable Legal Principles Concerning Duty to Defend.

In *Reese v. Travelers Insurance Company*, 129 F.3d 1056 (9th Cir.1997), the Ninth Circuit set forth the general legal principles concerning the duty to defend under California law.

> It is a well-established precept of insurance law that the duty to defend is broader than the duty to indemnify. *Montrose Chemical Corp. v. Superior Court*, 6 Cal.4th 287, 24 Cal.Rptr.2d 467, 474, 861 P.2d 1153, 1160 (1993) (*Montrose I* ). "An insurer may have a duty to defend even when it ultimately has no obligation to indemnify, either because no damages are awarded in the underlying action against the insured or because the actual judgment is for damages not covered under the policy." *Borg v. Transamerica Ins. Co.*, 47 Cal.App.4th 448, 54 Cal.Rptr.2d 811, 814 (1996).

To determine whether the insurer owes a duty to defend, the court must compare the allegations of the underlying complaint with the terms of the policy. *Montrose I*, 24 Cal.Rptr.2d at 471, 861 P.2d at 1157.[2] "[W]hen a suit against an insured alleges a claim that 'potentially' or even 'possibly' could subject the insured to liability for covered damages, an insurer must defend unless and until the insurer can demonstrate by reference to 'undisputed facts' that the claim cannot be covered." *Vann v. Travelers Companies*, 39 Cal.App.4th 1610, 46 Cal.Rptr.2d 617, 619 (1995). "This obligation can be excused only when the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage." *Lebas Fashion Imports v. ITT Hartford*, 50 Cal.App.4th 548, 59 Cal.Rptr.2d 36, 40 (1996) (quotations omitted).

At summary judgment stage, the insured must prove the existence of any potential for coverage, while the insurer must establish the absence of any such potential. *Vann*, 46 Cal.Rptr.2d at 619.

> In determining whether a duty to defend exists, courts look to all the facts available to the insurer at the time the insured tenders its claim for the defense. "[T]he insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages potentially covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Id.* (quoting *Montrose I*, 24 Cal.Rptr.2d at 474, 861 P.2d at 1160). Where the policy provides no potential for coverage, the insurer is under no duty to defend in the underlying action. *Waller v. Truck Ins. Exch.*, 11 Cal.4th 1, 44

---

**2.** The *Montrose* Court did not limit the determination of whether there is a duty to defend to the terms of the policy and complaint, but also to "all facts known to the insurer from any source." 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153. *See also Horace Mann*

*Insurance Co. v. Barbara B.*, 4 Cal.4th 1076, 1081, 17 Cal.Rptr.2d 210, 846 P.2d 792 (1993) ("Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy.").

Cal.Rptr.2d 370, 377–78, 900 P.2d 619, 627 (Cal.1995). Any doubt as to whether there is a duty to defend must be resolved in favor of the insured. *Montrose I*, 24 Cal.Rptr.2d at 474, 861 P.2d at 1160.

*Reese*, 129 F.3d at 1060 (reversing district court's grant of summary judgment for the insurer because liability potentially existed against the insured on the underlying claim for groundwater contamination).

■ Plaintiff has the burden of proving that the underlying action comes within the terms of the policy's duty to defend provision while Defendant bears the burden of proving that the potential claim covered by the duty to defend falls within an exclusionary clause. *Olympic Club v. Those Interested Underwriters at Lloyd's London*, 991 F.2d 497, 500 (9th Cir.1993).

### 2. Allstate Has Not Met Its Burden of Showing That There Was No Potential for Coverage Under the Duty to Defend Provision of Battle's Policy.

Allstate's primary argument is that it reasonably concluded that there was no potential for coverage under the duty to defend provision in Battle's insurance policy because, although Battle was incarcerated at the time of the accident, he was still a resident of the same household as Perkins. In support of its argument, Allstate relies primarily upon *Hillman v. Stults*, 263 Cal.App.2d 848, 70 Cal.Rptr. 295 (1968). In *Hillman*, a prison inmate filed an action seeking an accounting and to impress a trust upon property transferred to his sister. Defendants argued, in part, that the San Luis Obispo trial court was without jurisdiction because Plaintiff was a prison inmate residing outside of the county of San Luis Obispo. The Court of Appeal rejected that argument, stating that "[p]risoners do not gain or lose resi-

dence as a result of being removed to the prison system." *Id.* at 872, 70 Cal.Rptr. 295 (citing Cal. Constitution Art. II § 4 and Elec.Code § 14283).[3]

Defendant's attempt to apply the holding in *Hillman* or either of these election-related provisions to this case involving insurance is not persuasive. The California Supreme Court has rejected consideration of non-insurance case law for determining whether someone is a "resident" within the meaning of an insurance policy. In *Island v. Fireman's Fund Indemnity Co.*, 30 Cal.2d 541, 184 P.2d 153 (1947), Island was involved in an accident with the policyholder, who was driving his own son's car. The policy excluded coverage for use of a vehicle owned by "a member of his household." *Id.* at 543, 184 P.2d 153. Four months prior to the accident, the son left his father's home and joined the military. The insurer argued that the son was still a member of his father's household when the accident occurred, based upon the well-established principle that "the domicile or legal residence of a person is in no way affected by his enlistment in the armed forces in the absence of a contrary intent." *Id.* at 547, 184 P.2d 153. The California Supreme Court rejected that argument, however. It stated that this rule is "not decisive upon the question as to whether military service excludes the enlistee from being a 'member of the household' within the meaning of that term as used in an insurance policy." *Id.* The Court continued, "One of the definitions of the word 'household' given in Webster's New International Dictionary is, 'Those who dwell under the same roof and compose a family; a domestic establishment.' The courts have noted that the terms may have different meanings under different circumstances." *Id.* *See also Smith v. Smith*, 45 Cal.2d 235, 240, 288 P.2d 497 (1955) (" '[r]esidence' as used in the law, is a most elusive and indefinite term. It has

---

**3.** Article II of the California constitution provides that the legislature shall "enact laws to ... provide for the disqualification of electors while ... imprisoned ... for the conviction of

a felony." Election Code section 14283 (renumbered, now section 2025) provides: "A person does not gain or lose a domicile ... while kept in ... prison."

been variously defined. To determine its meaning, it is necessary to consider the purpose of the act.") (citing numerous statutes and cases where "residence" and "domicile" are equated and numerous cases and statutes where they are distinguished).

Pursuant to the directive of *Smith* and *Island,* this Court, then, will confine its analysis of the "resident relative" exclusion to the numerous insurance cases addressing this issue.[4]

■ As the California Supreme Court explained in *Island,* "[a] cardinal rule of interpretation is that, where a provision of an insurance policy is susceptible of two constructions, it should be construed most strongly in favor of the policyholder." *Id.* at 548, 184 P.2d 153. There, the Court concluded:

> This rule requires the conclusion that Cave, Jr., was not a member of his father's household at the time of the happening of the accident to Island. If the insurer intended to restrict its coverage to the extent of its defense in the present case, it should have used language clearly stating that purpose.

*Id.*

Similarly, in *National Automobile & Casualty Ins. Co. v. Underwood,* 9 Cal. App.4th 31, 11 Cal.Rptr.2d 316 (1992), an insurance company sought a declaration that it had no duty to indemnify or defend its insured's former husband's action against her for the injuries to their children sustained in an accident when she was driving. The insurance company argued it had no duty to defend under the "resident-relative" exclusion because the children should be deemed to reside with the mother, who was the insured.

The Court began its analysis by noting that

> The interpretation of the word "resident" as used in National's policy turns on whether that word is ambiguous in the particular context of children of divorced parents presented here. If "resident" is found to be ambiguous in this context, settled principles dictate that the term be construed against National and in favor of the insured.

*Id.* at 38, 11 Cal.Rptr.2d 316. Then, after examining numerous cases applying the "resident relative" exclusion, the Court concluded that application of the particular facts to the policy's term "resident" could produce several different results, thereby making that term ambiguous. As the Court explained,

> In line with ... *Safeco* [Ins. Co. v. Gibson, 211 Cal.App.3d 176, 259 Cal. Rptr. 206 (1989) ] and [*Cal–Farm Ins. Co. v.*] *Boisseranc* [,151 Cal.App.2d 775, 312 P.2d 401 (1957) ], we examine the particular circumstances of the case before us and adhere to the basic principles of insurance contract interpretation. Doing so, our focus becomes whether the "residency" of Bruce and Lorrie's children is capable of at least two reasonable constructions. If so, the exclusion clause here is to be construed in a manner favoring coverage.

> One reasonable construction is that the children have a single residence and that is with their father, Bruce.... [examining facts of children's living situations]. We believe a layperson, knowing

4. For the same reason that *Hillman* is not applicable, the Court rejects Allstate's contention that the reasoning in *Turner v. Kelley,* 411 F.Supp. 1331 (D.Kan.1976), *Michelman v. Frye,* 238 Cal.App.2d 698, 48 Cal.Rptr. 142 (1965) and *Cohen v. U.S.,* 297 F.2d 760 (9th Cir.1962) should be applied to this case. Although *FBS Mortg. Corp. v. State Farm Fire and Cas. Co. of Bloomington, Ill.,* 833 F.Supp. 688 (N.D.Ill.1993) was an insurance case, it is distinguishable for the following reasons: (1) it was a coverage case, not an exclusion case (*see Consolidated American Ins. Co. v. Mike Soper Marine Services,* 951 F.2d 186, 189 (9th Cir.1991) (noting distinction between the two kinds of cases)); and (2) it did not consider the issue of "inquiry notice" because it was a liability case, not a "duty to defend" case (*see Amato v. Mercury Casualty Co.,* 18 Cal. App.4th 1784, 23 Cal.Rptr.2d 73 (1993) (noting distinction between the two kinds of cases)).

all these undisputed facts, could reasonably deem the children to be residents of Bruce's household. And if one had to choose a single residence for the children, Bruce's household would be the logical choice.

On the other hand, one could reasonably read "resident" in a more literal sense to mean where these children were physically residing at the time of the accident, which was with Lorrie. After all, at the time of the accident Lorrie shared joint custody of the children with Bruce, and the children were then with her pursuant to the custody decree.

Another reasonable construction would be that the children, at the time of the accident, had dual residences with Bruce and Lorrie. This construction would exclude coverage to the same extent as if the family had remained intact under one roof.

Any of these three interpretations of "resident" would be reasonable. But, as stated in *Island v. Fireman's Fund Indemnity Co.* (1947) 30 Cal.2d 541, 548, 184 P.2d 153, "[a] cardinal rule of interpretation is that, where a provision of an insurance policy is susceptible of two constructions, it should be construed most strongly in favor of the policyholder." Pursuant to this principle, we adopt the interpretation that the children were not residents of Lorrie's [the mother] household at the time of the accident. If children of a divorced insured are to be excluded under the policy in the same fashion as children of an intact family under one roof, the insurer should make that clear in its policy.... Lacking a more explicit definition of "resident," an insurer must accept liability under any reasonable interpretation of the words it uses.

9 Cal.App.4th at 39–41, 11 Cal.Rptr.2d 316 (citations omitted). Thus, the wife's carrier had a duty to provide a defense to her against her former husband's action. *See also Consolidated American Ins. Co. v.*

*Mike Soper Marine Services,* 951 F.2d 186, 189 (9th Cir.1991) (applying California law to insurance exclusion clause, court notes that because both parties were able to cite to cases supporting their interpretation of the exclusion clause, it was inherently ambiguous and would be construed against the insurer).

■ Applying these cases to the instant case shows that a reasonable layperson could construe the resident-relative exclusion not to apply to persons remaining in the home of an insured who is incarcerated. As in *National Automobile,* based upon the limited knowledge Allstate had about Battle's incarceration, three potential situations could have existed: (1) if Battle was serving a brief term, Battle may have been a resident of both Tehachapi Prison and Cerritos; (2) if Battle was serving a life term, he may have been a resident only of Tehachapi (*Kibbee v. Blue Ridge Ins. Co.,* 69 Cal.App.4th 53, 81 Cal. Rptr.2d 294 (1999)) ("residence" "connotes any actual place of abode of some permanency, more than a mere temporary sojourn") (a resident-relative exclusion case), or (3) Battle was a resident only of Cerritos (*Hillman,* 263 Cal.App.2d at 872, 70 Cal.Rptr. 295) ("Prisoners do not gain or lose residence as a result of being removed to the prison system.").

It is undisputed that Allstate knew Battle was incarcerated. *See* Exh. 4 to Sherman Decl. (Allstate computer screen printout showing that Plaintiff's daughter called Allstate the date of the accident and told them that the accident happened on Plaintiff's way to visit Plaintiff's husband in prison). Given Allstate's knowledge, when Plaintiff counsel informed it of her suit against Williams and Battle, it had a duty to investigate further to determine the precise terms of Battle's incarceration and thus his residence. Moreover, given the ambiguity of the term "resident" as applied to specific family situations and the many different cases going different ways, at a minimum Allstate should have defended the suit with a reservation of rights and

brought an action for declaratory relief to determine its liability.

Finally, although Plaintiff does not raise this argument, an examination of the full "resident relative" exclusion and not just the term "resides" reveals the ambiguity of the provision to these facts. Under the policy, "resident" is "a person who *physically resides in your household* with the intention of continuing residence there." (Emphasis added.) The policy's use of the term "physically" to modify "resides" indicates that a reasonable policyholder would construe the policy exclusion to apply only to persons who actually live under the same roof. *See Island,* 30 Cal.2d at 547, 184 P.2d 153 (in policy excluding coverage for "a member of [the insured's] household," Court defines "household" as "those who *dwell under the same roof* and compose a family; a domestic establishment.") (quoting Webster's New International Dictionary) (emphasis added).

At oral argument, Allstate argued that a case which was decided a few days before the hearing, *Mitroff v. United Services Automobile Assoc.,* 72 Cal.App.4th 1230, 85 Cal.Rptr.2d 759 (1999), dictates a contrary result. In *Mitroff,* Mitroff sued his insurer for its failure to defend him in a personal injury action brought by his former wife. The insurer argued that, under the resident-relative exclusion, it had no obligation to defend Mitroff because, at the time of the incident, Mitroff and his wife were residents of the same household. After Mitroff tendered his defense to the insurer, a field claims representative interviewed Mitroff and learned that although Mitroff and his then-wife lived in the same house, they lived on different floors, but shared the living room and kitchen areas.

*See id.* 72 Cal.App.4th 1230, 85 Cal.Rptr.2d at 762 (insurer's letter outlining Mitroff's version of the events: "on October 29 he was on the second floor of the residence eating dinner when Lamb approached him. Because he would not respond, she threw a large jar of marinated vegetables at him, missing him by inches. Mitroff ran down the hallway after Lamb, and restrained her by holding her forearms with his hands for about 15 seconds. She returned to the downstairs level and Mitroff cleaned up the vegetables. On October 31, Lamb came upstairs to complain because Mitroff had told her to shut off a battery-operated Halloween witch. Mitroff said he did not wish to speak to her, and told her to move out of the house by the next week."). The Court of Appeal affirmed the trial court's grant of summary judgment for the insurer, holding that even though Mitroff and his wife were living on separate floors of the same house, they were deemed residents of the same household for purposes of the exclusionary clause. *Id.* 72 Cal. App.4th 1230, 85 Cal.Rptr.2d at 763 (" The clear meaning of the resident of the same household exclusion is that it applies to spouses who live together under the same roof, particularly where one is still supported, at least in part, by the other.").[5] In contrast to *Mitroff,* in the instant case it is undisputed that Allstate knew Battle did not "liv[e] together [with Plaintiff] under the same roof" at the time of the accident.[6]

In its reply, Allstate argues that denying its motion would mean that an insurance company cannot rely on its records (which showed that Plaintiff and Battle resided at the same address) when a request for a coverage arises, but must instead conduct an extensive investigation to ensure that there is not even a remote possibility of

---

**5.** In reaching its conclusion, the Court noted: "We have reviewed the cases involving the definition of a household in the insurance context, and note that a detailed exposition of the varying factual circumstances of these cases yields only the general proposition that, if reasonably possible, courts will interpret the same term broadly to extend coverage in the case of a coverage provision and narrowly

to allow coverage in the case of an exclusion." *Id.* 72 Cal.App.4th 1230, 85 Cal. Rptr.2d at 765 (citing cases).

**6.** There is no evidence in this record as to whether either Plaintiff or Battle supported each other nor whether Allstate inquired about that fact.

coverage (*e.g.*, investigating whether Plaintiff was legally separated from her husband when it had no indication that this was the case). Reply at 3 (citing, *inter alia, American Intern. v. Fidelity & Deposit*, 49 Cal.App.4th 1558, 57 Cal.Rptr.2d 567 (1996)) (review of complaint and policy a sufficient investigation). What this argument ignores is that Allstate *was* aware of a potential for coverage from the very first date of the accident. Specifically, it received information that Battle was not living at home but was incarcerated. Even under *American Intern.*, this put Allstate on inquiry notice of a potential for coverage. *Id.* at 1571, 57 Cal.Rptr.2d 567 ("The risk that an insured takes when it denies coverage without investigation is that the insured may later be able to prove that a reasonable investigation would have uncovered evidence to establish coverage or *a potential for coverage*. In that case,

the insurer will be liable for the costs of the defense already incurred by the insured and could also be exposed to tort liability.") (emphasis added; citations omitted). *See also Amato v. Mercury Casualty Co.,* .18 Cal.App.4th 1784, 23 Cal.Rptr.2d 73 (1993) (where Amato caused accident injuring Sutton and insurer refused coverage based on resident-relative exclusion even though insurer had some information suggesting that Amato was residing at a different location, insurer had duty to investigate further and to defend until it established there was no potential for coverage, even though jury ultimately concluded that Amato was residing with Sutton at time of accident).[7]

Allstate also argues that any investigation would have revealed the precise evidence that it presents with this motion:

---

7. *Utley v. Allstate Ins. Co.*, 19 Cal.App.4th 815, 823, 24 Cal.Rptr.2d 1 (1993), a case heavily relied on by Allstate, is distinguishable. First, unlike this case, the two relatives were in fact both physically residing in the same abode at the time of the accident. Second, they both intended and expected that they both would continue to live in the same house for another 4–5 months after the accident—unlike here, where Battle and Perkins were separated by the terms of Battle's incarceration. Third, in *Utley*, Allstate brought an action for declaratory relief. Here, in contrast, Allstate simply denied coverage. As the Court explained in *Amato I*, although an insurer need not necessarily file a declaratory relief action or defend the action with a reservation of rights, if it fails to do either or to conduct a proper investigation, it "take[s] its chance that the trier of fact in an action alleging bad faith breach of the contractual duty to defend will agree that no defense was owed." 18 Cal.App.4th at 1792, 23 Cal. Rptr.2d 73. *See also id.* at 1793, 23 Cal. Rptr.2d 73 ("While we do not suggest that an insurer must seek declaratory relief in order to avoid liability, or that information objectively demonstrated to be false creates a duty to defend, the fact remains that an insurer who simply denies coverage based upon its uncorroborated belief that the information in its possession may be fabricated, does so at its own risk, not at no risk.").

In another case relied upon by Allstate, *Reserve Ins. Co. v. Apps*, 85 Cal.App.3d 228, 149 Cal.Rptr. 223 (1978), the Court of Appeal

affirmed the trial court's conclusion that a husband who was not living with his wife at the time she was involved in an automobile accident because he had moved out for a trial separation was, for purposes of the resident-relative exclusion, still "residing" at his wife's home. *Reserve* is distinguishable. First, it was a liability case, not a "duty to defend" case. Second, it was a coverage case, not an exclusionary clause case. *See, supra*, note 4 (discussing distinction). Third, the Court noted that nothing in the record suggested that the separation was other than a trial separation: "Thus we do not deal with a case in which a husband and wife had separated without intention or hope of resuming a normal married life." *Id.* at 231 n. 2, 149 Cal. Rptr. 223. (Allstate cites to no cases which resolved the question left open in *Reserve*.) Here, Allstate had notice that Battle was in prison but, contrary to its obligations under the "duty to defend," conducted no follow up investigation to determine whether his incarceration was for a short period of time or a lengthy, possibly even life term. And finally, as that Court explained: "If an insurer desires not to cover spouses separated under the conditions here shown to exist, it should make that purpose clear in its policy; lacking any such more explicit definition of 'resident,' an insurer must, under well settled doctrines of interpretation of insurance policies, accept liability under any reasonable interpretation of the words it uses." *Id.* at 232, 149 Cal. Rptr. 223.

that Plaintiff and Battle are married and that Battle intends to return to his home when he is released from prison. The relevant inquiry, however, is not concerning the facts as they now appear, but the facts as they were known to the insurer at the time coverage was sought. *Reese,* 129 F.3d at 1060 ("In determining whether a duty to defend exists, courts look to all the facts available to the insurer at the time the insured tenders its claim for the defense.") (quoting *Vann,* supra, 39 Cal. App.4th at 1614, 46 Cal.Rptr.2d 617). *Cf. Amato,* 18 Cal.App.4th at 1790, 23 Cal. Rptr.2d 73 ("the duty to defend may exist even where coverage is questionable and ultimately found lacking").

█ Finally, at oral argument, Allstate argued two points that it had not previously addressed in its papers.[8] First, it argued that it should not be held liable for any failure to ascertain whether Battle was a resident of Cerritos or Tehachapi Prison (or both) because its May 9, 1996 letter to Plaintiff's former counsel requested that he inform Allstate of any contrary facts and that he failed to do so. *See* May 9, 1996 letter ("Due to the fact that Ms. Perkins/Battle [sic] is a listed driver and a resident of our [sic] household, she would be Excluded from any recovery under the Liability Coverage of the Policy. [¶] Should you have any information to [sic] contrary, please contact us immediately so we may reevaluate our position in [sic] this issue."). This argument is not persuasive.

Allstate's May 9, 1996 refusal to defend was sufficiently clear and final to constitute a denial of coverage, notwithstanding the open-ended language contained in the letter. *Cf. Liberty Transport Inc. v. Harry W. Gorst Co.,* 229 Cal.App.3d 417, 436–437, 280 Cal.Rptr. 159 (1991) (insured deemed to have denied coverage at the time it sent letter denying coverage, notwithstanding letter's statement that

"should you have any [further] information [supporting your claim] please let us know and we shall investigate said information", *disapproved on another point in Adams v. Murakami,* 54 Cal.3d 105, 116, 284 Cal. Rptr. 318, 813 P.2d 1348 (1991)). Moreover, Allstate's position would enable a carrier to avoid *its* ongoing obligation to prove the absence of a duty to defend. *Cf. Hartford Acc & Indem. Co. v. Superior Court (Syntex Corp.),* 23 Cal.App.4th 1774, 29 Cal.Rptr.2d 32 (1994) ("the duty to defend begins when a potential for coverage arises, and the duty continues *until the insurer proves otherwise.*") (emphasis added).

█ Second, Allstate argued at oral argument that in denying coverage under the resident-relative exclusionary clause, it could reasonably rely upon the fact that Plaintiff was added to Battle's policy on October 27, 1994, which was only shortly before the December 27, 1994 accident. According to Allstate, a reasonable person could infer from this fact that Plaintiff and Battle were still residing together a mere two months later. Absent other facts, Allstate may have been reasonable in assuming that Plaintiff and Battle still resided in the same household. However, Allstate does not dispute that it *knew* that Battle was incarcerated on the date of the accident. The fact that Plaintiff was added to the policy only two months before does not undermine the fact that Battle's incarceration at the time of the accident provided a potential for coverage because the resident-relative exclusion no longer applied.

Because a potential for coverage under the "duty to defend" provision of Battle's insurance policy existed, and because Allstate has not demonstrated as a matter of law that it properly followed up on the facts that it had, this Court must deny Allstate's motion for summary judgment on Plaintiff's breach of contract claim.

8. Although "[a]rguments raised for the first time at oral argument are generally waived" (*Wood v. Hall,* 130 F.3d 373, 377 (9th Cir. 1997)), this Court will nevertheless consider such arguments because the Court invited them in the June 11, 1999 minute order advising the parties of the Court's tentative ruling.

## B. Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

██ "An insurer is liable for breach of the implied covenant of good faith and fair dealing if it acted unreasonably in denying coverage." *Lunsford v. American Guarantee & Liability Ins. Co.*, 18 F.3d 653, 656 (9th Cir.1994).

Allstate bases its motion against this claim on two grounds: (1) given the resident-relative exclusion, no duty to defend ever arose and it thus cannot be found to have breached the covenant, and (2) because Williams never tendered a defense, Allstate cannot be found to have breached the covenant. As to the first argument, Allstate makes no argument beyond its argument attacking the merits of Plaintiff's breach of contract claim. Because the Court rejects that argument above, it will not address that argument again.

As to the second argument, Allstate argues that even though it could be deemed constructively aware of the lawsuit against Williams (*see California Shoppers, Inc. v. Royal Globe Ins. Co.*, 175 Cal.App.3d 1, 221 Cal.Rptr. 171 (1985)), the "constructive notice" theory does not apply to the tort of breach of the covenant of good faith and fair dealing (*i.e.*, unless Williams actually tendered a defense and Allstate denied the request, it cannot be found liable on a tort theory as a matter of law). In this regard, Allstate is only partially correct.

██ As Justice Croskey explains in The Rutter Group's *Insurance Litigation* series, although constructive notice of a potential for coverage suffices for a breach of contract claim based on the duty to defend, "actual, not constructive, notice is required to maintain a 'bad faith' action against the insurer for refusal to defend." *Id.* at § 7:617. *See also id.* at §§ 12:603–605.

██ There is a significant exception to this body of law, however. The exception arises when, as here, the insurer has expressly denied coverage. As Justice Croskey explains:

**Notice excused if insurer denied coverage:** An insurer that has erroneously denied coverage cannot avoid liability for its failure to settle or defend by claiming lack of opportunity to do so. By denying coverage, the insurer waives its right to control defense of the third party action. The insured therefore is under no obligation to notify the insurer upon being served or to request a defense: "The law is established that where an insurance company denies liability under a policy which it has issued, it waives any claim that the notice provisions of the policy have not been complied with."

### (a) Application.

— Insured's pickup truck injured Victim. The accident was reported to Insurance Co. but it denied coverage, erroneously claiming the pickup truck was not covered under its liability policy. As a result, Insured never formally requested Insurance Co. to defend the lawsuit subsequently filed by Victim. Having denied coverage, the argument that insured must request a defense was "sheer sophistry." [*Samson v. Transamerica Ins. Co.*, 30 Cal.3d 220, 239, 178 Cal.Rptr. 343, 355, 636 P.2d 32 (1981)]

— After being notified of accident, Insurance Co. said it would not defend because the insurance premiums had not been paid. But it was in error; the premiums had been paid. When Victim filed suit, Insured was not obligated to notify Insurance Co. of the service of summons. "(O)nce the insurer had wrongfully denied liability ... the insured was released from the obligation to leave the management of the claim to the insurer and was justified in proceeding on her account in whatever manner seemed proper to her under the circumstances." [*Drinnon v. Oliver* (1972) 24 Cal.App.3d 571, 580, 101 Cal.Rptr. 120, 125]

*Insurance Litigation,* § 12:606–608 (citation omitted).

Here, in response to Plaintiff's counsel's April 18, 1996 letter, Allstate responded in writing on May 9, 1996, expressly declining coverage for this occurrence. Thus, it appears that Allstate may not avail itself of this exception.

At oral argument, Allstate argued that this exception should not apply here because this is not a direct action by Plaintiff, but a derivative action on behalf of Williams. Because Allstate never denied coverage *to Williams,* it argues that Plaintiff, standing in the shoes of Williams, cannot utilize this exception. Allstate failed to cite any cases in support of its theory nor has this Court's independent research revealed such a case.

California courts created this exception based upon the theory that the denial of coverage constitutes a waiver of the insurance policy's notice provisions. *CNA Cas. of California v. Seaboard Sur. Co.,* 176 Cal.App.3d 598, 617, 222 Cal.Rptr. 276 (1986) ("[t]he law is well established that where an insurance company denies liability under a policy which it has issued, it waives any claim that the notice provisions of the policy have not been complied with.") (citing cases). The pertinent inquiry, then, is not who received notice of the denial of coverage, but whether the insurer denied coverage, thereby waiving its ability to rely upon lack of notice as a defense. *Id. See also Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865, 881–84, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978) (in defending an action brought under Ins. Code § 11580, insurer cannot argue lack of compliance with policy's notice provision as a defense unless insurer shows that it was "substantially prejudiced" by failure of insured to tender defense; absent evidence that the insured would have provided a defense, potential liability for default judgment against insured does not constitute "substantial prejudice"). Here, Allstate does not contend that had Williams tendered a request for a defense to Plaintiff's lawsuit, it would have provided such a request. Accordingly, the Court rejects Allstate's argument that Williams' failure to tender a defense precludes Plaintiff from maintaining an action on Williams' behalf under Ins.Code § 11580 against Allstate for breach of the implied covenant of good faith and fair dealing.

## VI.

## FURTHER PROCEEDINGS

At the hearing on Allstate's motion, Allstate stated that, if this Court denied its motion, it intended to file a motion for partial summary judgment on the issue of potential damages. Although the time for filing such a motion has passed (*see* April 26, 1999 Scheduling and Case Management Order setting June 28, 1999 as the last date for *hearing* motions), the Court concludes that entertaining and resolving such a motion will likely go a long way toward the parties' ability to settle this litigation in its entirety. Accordingly, the Court modifies the April 26, 1999 order by extending until June 28, 1999, the time for filing Allstate's motion for partial summary judgment on the issue of potential damages.

## VII.

## CONCLUSION

For all the above stated reasons, and good cause appearing therefor, the Court hereby denies Allstate's motion for summary judgment.

IT IS SO ORDERED.